391 F.2d 163
 In the Matter of IMPERIAL "400" NATIONAL, INC., a Delaware Corporation, et al., Debtors.
Robert Richenberg and Ruth Richenberg, Frank McGuire and Florence McGuire, and Glen Luhman and Arlene Luhman, Appellants,
Thomas J. O'Neill, Trustee-Appellee.
 No. 16614.
 United States Court of Appeals Third Circuit.
 Argued November 6, 1967.
 Decided March 7, 1968.
 
 COPYRIGHT MATERIAL OMITTED Lawrence B. Raff, Raff, Sherman & Scheider, Newark, N. J. (Charles B. Turner, Newark, N. J., on the brief), for appellants.
 James M. Bell, Nolan & Lynes, Newark, N. J. (Joseph M. Nolan, Ernest R. Nuzzo, Newark, N. J., on the brief), for appellees.
 Before STALEY, Chief Judge, and KALODNER and FORMAN, Circuit Judges.
 OPINION OF THE COURT
 FORMAN, Circuit Judge.
 
 
 1
 Appellants, Robert and Ruth Richenberg, Frank and Florence McGuire, and Glen and Arlene Luhman, appeal from an order of the United States District Court for the District of New Jersey remanding to the Referee in Bankruptcy for findings of fact and conclusions of law the issue as to who had title to certain funds paid by the appellants to Imperial "400" National, Inc. (Imperial), one of the debtors in bankruptcy.
 
 
 2
 Beginning in 1961 Imperial engaged in the business of constructing motels, advancing so rapidly that by June 1965 its chain comprised 115 motels in operation and 14 in stages of construction in approximately 38 states. Except in a few instances of motels wholly owned by Imperial, the pattern followed was, upon completion of a motel, to sell a 50 percent interest in it to a third party who became co-owner with Imperial and resided at and operated the motel. On April 30, May 11, and May 15, 1965, respectively, each couple of the appellants entered into such a separate co-owner operator agreement with Imperial and paid it a deposit of $15,000. These monies were deposited by Imperial in an account at the Peoples Trust Company of Bergen County entitled "Imperial `400' National, Inc. Escrow Account." On June 3, 1965, shortly after the last deposit had been made, a Petion for Arrangement under Chapter XI of the Bankruptcy Act was filed by Imperial and its subsidiaries.
 
 
 3
 Subsequently, on December 29, 1965, a reclamation application was filed by appellants and on the same day the Referee in Bankruptcy issued an order directing the Receiver of Imperial and the Peoples Trust Company of Bergen County to show cause why the funds held in the aforementioned account should not be returned to the appellants. The order to show cause came on for hearing on January 26, 1966, whereupon the Referee granted the application and entered an order effectuating the return of the deposits.[1]
 
 
 4
 Meanwhile, on December 30, 1965, the Security and Exchange Commission filed a motion for leave to intervene for the purpose of moving to dismiss the debtors' petition and to dismiss the Chapter XI proceedings unless the debtors' petition should be amended or a creditors' petition filed to comply with the requirements of Chapter X of the Bankruptcy Act.
 
 
 5
 Based on these motions an order was filed on January 3, 1966 by the District Court directing Imperial and its associated debtors to show cause on January 7, 1966 why the motions of the Security and Exchange Commission should not be granted. The order also provided that any confirmation of any arrangement under Chapter XI proceedings should be stayed pending determination of the motions.[2] On January 7, 1966, the District Court, pursuant to its show cause order, took evidence, heard arguments and reserved its decision. At the end of the hearing the District Court orally continued the restraint contained in the order to show cause.
 
 
 6
 In an order filed on February 2, 1966, the District Court granted the Securities and Exchange Commission leave to intervene and also dismissed the Chapter XI proceedings unless either Imperial or its creditors filed an amended petition complying with the provisions of Chapter X within ten days. On February 21 the Chapter XI Receiver was replaced by a Chapter X Trustee.
 
 
 7
 On April 25, 1966, pursuant to a petition therefor by the Trustee, the District Court filed an order directing the appellants to show cause why they should not be required to turn over the funds received by them under the Referee's order of January 26, 1966. Appellants contested the jurisdiction of the District Court to entertain the Trustee's petition which, in effect, sought review of the Referee's order long after the expiration of the ten day period of limitation provided in section 39(c) of the Bankruptcy Act, 11 U. S.C. § 67(c). After asserting that it had jurisdiction to vacate the Referee's order of January 26, 1966, the District Court entered the aforementioned order on March 3, 1967 remanding the matter to the Referee and directing him to make findings as to whether the monies had been properly refunded to the appellants. This appeal followed.
 
 
 8
 At the outset, the Trustee (appellee here) challenges the jurisdiction of this court by a motion to dismiss the appeal contending that since it is taken from an order of the District Court which merely refers the matter to the Referee for an evidentiary hearing, without determining any issue on the merits, it is premature. The motion was denied, but without prejudice, and with the right of the Trustee to renew it on the argument of the merits of the appeal, which right is now being exercised.
 
 
 9
 Section 24(a) of the Bankruptcy Act, 11 U.S.C. § 47(a), provides that the Court of Appeals is vested with jurisdiction on appeals from the Bankruptcy Court "in proceedings in bankruptcy, either interlocutory or final, and in controversies arising in proceedings in bankruptcy, to review, affirm, revise, or reverse, both in matters of law and in matters of fact." Hence, as a general rule, an appeal from either an interlocutory or final order may be entertained in proceedings in bankruptcy, while in a controversy arising in proceedings in bankruptcy an appeal may be taken only from a final order. The definition of these categories has been often restated and both parties concede that:
 
 
 10
 "A controversy arising in proceedings in bankruptcy has generally been held to embrace disputes between the trustee and adverse claimants concerning the right and title to the bankrupt estate. Proceedings in bankruptcy, on the other hand, refer to matters affecting merely the administration and distribution of the estate."[3]
 
 
 11
 Viewing the March 3, 1967 order of reference by the District Court to the Referee as an interlocutory order, this court, in ruling on its jurisdiction to hear this appeal must determine into which of these two categories that order falls.
 
 
 12
 Intrinsically that order did not deal with the dispute over title to the funds now claimed by the Trustee. Rather there was before the District Court the issue of whether the original order made by the Referee awarding the funds to the appellants and from which no review had been taken was nevertheless susceptible of being reopened. When the District Judge announced that his determination was to be in the affirmative, appellants, with appeal purpose in mind, pressed him to declare in his order that the Referee's order was vacated or reopened. This the District Judge declined on the ground of preventing a multiplicity of appeals.[4]
 
 
 13
 There can be no question that the District Court made a definitive determination that it had jurisdiction to vacate the Referee's order because it so stated in a letter to counsel dated December 29, 1966. Again during the hearings of January 23, and February 14, 1967 the jurisdiction to vacate the Referee's order was reiterated. Finally this holding was recorded in the recital of the March 3, 1967 order in the significant language:
 
 
 14
 "[T]he court having ruled on December 29, 1966 that it had jurisdiction to vacate the January 26, 1966 order of the referee * * *."
 
 
 15
 The consequence of the District Court's assertion of jurisdiction to rehear the merits of the reclamation application (albeit by reference) is to require appellants to relitigate issues already decided by the Referee. This is the equivalent of directly reopening his order.
 
 
 16
 This case differs from a normal petition for a turnover or a reclamation order which involves a dispute concerning title to specific property and thus inherently raises a "controversy arising in proceedings in bankruptcy." Here the controversy has been resolved by the Referee's unreviewed order. The action of the District Court from which this appeal is taken determined the procedure whereby the order of the Referee was to be reopened for the purpose of rehearing the merits of the dispute already decided.
 
 
 17
 The distinction between a "controversy arising in proceedings in bankruptcy" and "proceedings in bankruptcy," from which it must be determined whether an interlocutory order may be the subject of appeal, has often been characterized as being hairline thin and the classification depends on an analysis of each case.[5] The showing in this case is persuasive that the order of the District Court of March 3, 1967, was one made in "proceedings in bankruptcy" rather than in a "controversy arising in proceedings in bankruptcy." Hence, the order of the District Court overruling the objection to its jurisdiction is subject matter over which this court has appellate jurisdiction.[6]
 
 
 18
 Turning now to the merits of the appeal: Appellants question the jurisdiction asserted by the District Court to vacate the order of the Referee in Bankruptcy granting an application for the reclamation of funds in the possession of the debtor, Imperial, from which no review was sought. The application for the funds alleged that they had been deposited under the co-owner agreements whereby Imperial accepted them in trust pending the consummation of the agreements; that the Chapter XI proceedings had intervened; and that these funds had remained on deposit in a special escrow bank account. On January 26, 1966, at the hearing on the application the allegations of the petition were not disputed. On the contrary, the attorney for the Receiver announced that he and the Receiver had determined from their investigation that the funds claimed were indeed "escrow money representing funds of these particular depositors in a specific account marked escrow account" and that they would have no objection to an order directing payment to each of the appellants. The debtors' attorney, present at the hearing, indicated that he also had no objection to such an order.
 
 
 19
 The review of that order by the District Court is controlled by section 39 (c) of the Bankruptcy Act.[7] That section, as amended in 1960, provides that unless a person aggrieved by an order of the referee files, within ten days after its entry, a petition for review or a petition to extend the time for filing a petition for review, the referee's order shall become final. The 1960 amendment made compulsory the filing of the appropriate petition within ten days following the entry of the referee's order. The clear intent of this amendment was to give finality to a referee's order unless it is subjected to direct timely attack.[8] The courts which have had occasion to determine the effect of the 1960 amendment have required strict compliance with its mandatory provisions.[9]
 
 
 20
 The Trustee, in his petition of April 25, 1966 contended and now argues that the Referee's order should not be accorded the finality which section 39 (c) would otherwise require, because the Referee failed to give notice of appellants' reclamation application to necessary parties and because at the time the Referee entered his order granting the reclamation he lacked jurisdiction to do so.
 
 
 21
 As to notice, section 315 of the Bankruptcy Act[10] provides that in Chapter XI proceedings the bankruptcy court, where not otherwise specified, shall designate the persons to whom notice shall be given. The Referee, validly exercising his authority had the discretion to determine to whom notice of the reclamation application should be given.[11] Such notice was given to the Receiver and to the Peoples Trust Company, the bank in which the escrow funds had been placed. Specifically, the Trustee complained that the debtor corporations were not given notice. Whether they should have been given notice need not be determined, because at the hearing before the Referee, on January 26, regarding the reclamation application, the attorney for the debtor, Imperial, was present in the court and, in fact, consented to the reclamation of the deposits.
 
 
 22
 The District Court, in deciding that it had jurisdiction to vacate the Referee's order, stated:
 
 
 23
 "[I]n my opinion, the Securities and Exchange Commission became a necessary party to any further or collateral proceeding touching upon the capital assets of this bankrupt, and there was no notice to the SEC."
 
 
 24
 The Securities and Exchange Commission had filed its motion for intervention and for dismissal of the Chapter XI proceedings on the day after the reclamation application had been filed and the order to show cause pursuant to it had been issued. The order granting the reclamation, dated January 26, 1966, was filed seven days before the District Court filed its order of February 2, 1966 granting the motion for intervention and dismissal. Until the District Court entered its order permitting the Securities and Exchange Commission to intervene, it could not be regarded as a necessary party to the reclamation proceedings. Thus, the Trustee's contention that the Referee failed to give notice to necessary parties is without merit.
 
 
 25
 The District Judge, understandably concerned with his duty to protect the bankrupt's estate from improper liquidation, was impressed with the Trustee's contention that the Referee lacked jurisdiction to enter the reclamation order. He stated:
 
 
 26
 "[W]hile normal administration of estates should continue, capital assets were not to be dissipated in the interim, and I feel, though there is no case in point, that once a Chapter X petition is filed the capital assets should remain intact pending the disposition by the District Court of the Chapter X petition — or, rather, when a petition to place the matter under Chapter X has been filed and is under consideration by the District Court the capital assets should remain intact."
 
 
 27
 This suggestion, however, cannot be adapted to the circumstances of this case. Neither the mere filing of the motion of the Securities and Exchange Commission to dismiss the Chapter XI proceedings nor the issuance of the order to show cause based thereon automatically effected the type of restraint contemplated in the above quotation. In fact, the only restraint called into being at this stage was the provision in the order to show cause of January 3, 1966: "pending determination of this application the confirmation of the arrangement is hereby stayed." At the hearing of January 26, 1966, the Referee, aware that the District Court had taken the Security and Exchange Commission's motion under advisement, adjourned consideration of the Chapter XI plan of arrangement and its confirmation pending the outcome of the Security and Exchange Commission's motion in conformity with the above stay. Absent a more inclusive restraining order, the Referee had jurisdiction to entertain and act upon the appellants' reclamation application.
 
 
 28
 For these reasons the Trustee's challenge to the validity of the Referee's reclamation order on the grounds of lack of notice and jurisdiction must fall. In this situation and since the Trustee's petition for a turnover was filed long after the statutory ten day period had expired, the Referee's order granting the reclamation was final and not subject to review by the District Court. Hence, the assumption of jurisdiction by the District Court to vacate the Referee's reclamation order was error.
 
 
 29
 On this appeal, the Trustee asserts two other grounds as justification for the District Court's power to reconsider the Referee's order. First, he contends that the assumption of jurisdiction by the District Court to vacate the Referee's unreviewed reclamation order is justified by the provisions of section 57(k) of the Bankruptcy Act.[12] This section has reference to the allowance of claims, that is, the acceptance of an asserted right of a creditor to share in the general assets of the estate. Such is not the present situation which concerns the right of an adverse claimant to the return of property alleged to be his and not a part of the debtor's estate. The many cases cited by the appellee in this connection have been examined. They fail as analogies to the circumstances here and as foundations for his position on this point.
 
 
 30
 The second ground advanced by the Trustee is that the District Court is empowered to grant relief from the Referee's order, in the interest of justice, under the provisions of Federal Rules of Civil Procedure, Rule 60(b).[13] This rule, however, is no more applicable here than section 57(k) of the Bankruptcy Act just considered. As appellants point out, no motion under Rule 60(b) was made to the District Court. The Trustee merely filed his turnover petition. But even if that petition is treated as a motion under Rule 60(b) (4), alleging that the order is void, the only grounds asserted are that: (1) the Referee failed to give notice to necessary parties and (2) he lacked jurisdiction to make the order. These grounds have been examined and discussed in full herein and they were found to have no merit. Therefore, they cannot justify relief under Rule 60(b) (4).
 
 
 31
 None of the other five subdivisions of Rule 60(b) offer any refuge to the Trustee with the possible exception of the residuary clause (6) which specifies: "any other reason justifying relief from the operation of the judgment." True it is that the Trustee was appointed some weeks after the period had expired for filing a timely petition for review of the Referee's reclamation order. But he does not contend that the order was fraudulently induced or procured in bad faith or by reason of misconduct. Rather his petition pleads, in effect, that it is his opinion from the facts developed to the date thereof that the escrow bank account maintained by Imperial did not constitute a trust fund for the sole benefit of appellants. This contention is made in the face of the Referee's hearing wherein the duly appointed Receiver of the same debtors conceded the validity of the allegation of appellants' reclamation application and recorded his consent to granting it. This consent was based upon his stated investigation of the relationship between the appellants and Imperial and the status of the same escrow bank account. Imperial also registered its unqualified consent to the granting of the application. The Referee at this point could hardly have done other than order the reclamation.
 
 
 32
 The issues presented before the Referee are no different from those which the Trustee proffers. Certainly the appellants were the same parties and, in this reclamation proceeding, the interests represented by the Chapter XI Receiver was substantially identical with those of the Chapter X Trustee. Can the Trustee under such circumstances insulate himself from the res judicata effect of the Referee's unreviewed order?
 
 
 33
 Once more the cases cited by the Trustee to support the position that the Referee's order, granted under the foregoing circumstances, has no binding effect on him are without analogy to this case. Indeed, no case has been cited by either party, and none has been found, which is precisely upon the point whether a Chapter X trustee is freed of the effect of a referee's unreviewed order to which a prior Chapter XI receiver consented.
 
 
 34
 Some degree of analogy is disclosed in In re Tele-Tone Radio Corp.[14] where the court held that an order of the referee from which no appeal was taken was res judicata both in bankruptcy and in the Chapter X proceedings wherein the parties were the "same" because the Chapter X trustee is privy to the bankruptcy trustee. Also in Hummel v. Equitable Life Assur. Soc.,[15] a successor trustee in bankruptcy was bound by a judgment against his former trustee where the identical issue was sought to be relitigated after many years had intervened.
 
 
 35
 These cases revolve around the soundness of the policy of protecting the finality of valid judgments and the avoidance of the chaos which would inevitably result if litigation were to be continued beyond the terminal point where rights had been finally resolved. So here, since the Trustee would represent substantially the same interests as the Receiver in defending against appellants' application, no reason appears why the transition from Chapter XI to Chapter X should enable the Trustee to relitigate the same issues already finally determined by the Referee.
 
 
 36
 All of this leads to the conclusion that the allegations pleaded by the Trustee do not pose the extraordinary circumstances which constitute grounds for invoking Rule 60(b) (6).[16]
 
 
 37
 Finally, if Rule 60(b) is to be given the effect sought by the Trustee, his petition for a turnover would clearly amount to a review of the Referee's unreviewed reclamation order contrary to the well established principle that a motion under Rule 60(b) may not be used as a substitute for appeal.[17]
 
 
 38
 In view of the ruling herein that this court has jurisdiction of the appeal, appellee's motion to dismiss it will be denied, and since the District Court did not have jurisdiction to vacate the Referee's unreviewed reclamation order of January 26, 1966, its order of March 3, 1967 will be vacated.
 
 
 
 Notes:
 
 
 [1]
 The bank had, assertedly without authorization, withdrawn certain sums against the escrow account leaving only $11,011.38 to be returned on account of each $15,000 deposit. The proceeding against the Peoples Trust Company was dismissed without prejudice since it was conceded that the Bankruptcy Court was without summary jurisdiction to give relief against the bank
 
 
 [2]
 The only restraint contained in the order to show cause enjoined the confirmation of any arrangement
 
 
 [3]
 In re Christ's Church of the Golden Rule, 172 F.2d 523, 524 (9 Cir. 1949)
 
 
 [4]
 At the hearing of February 14, 1967, the following colloquy ensued:
 "Mr. Corcoran [Appellants' counsel]: Yes, your Honor, and I understand, and it is our opinion, as Mr. Raff has stated, that the Court does not have the jurisdiction to do so, and all we would request is that the order state the Trustee's (sic) [Referee's] order be reopened so we could predicate our appeal upon that order.
 "The Court: I am not going to do that.
 "As I had occasion to remark earlier, if that goes up to the United States Court of Appeals it is going to go up on a full record. It is not going to go up piecemeal. You are not going to challenge one aspect of it and then if you are unsuccessful have it sent back here for further proceedings, sent back here and then go up again. No, I will not do that."
 
 
 [5]
 See, e. g., Texas & N.O.R. Co. v. Phillips, 211 F.2d 419 (5 Cir. 1954); In re Greenstreet, Inc., 209 F.2d 660 (7 Cir. 1954); Columbia Foundry Co. v. Lochner, 179 F.2d 630, 14 A.L.R.2d 1349 (4 Cir. 1950)
 
 
 [6]
 2 Collier, Bankruptcy, ¶ 24.39 (14th ed. 1966) (and cases cited therein)
 
 
 [7]
 11 U.S.C. § 67(c):
 "A person aggrieved by an order of a referee may, within ten days after the entry thereof or within such extended time as the court upon petition filed within such ten-day period may for cause shown allow, file with the referee a petition for review of such order by a judge and serve a copy of such petition upon the adverse parties who were represented at the hearing. Such petition shall set forth the order complained of and the alleged errors in respect thereto. Unless the person aggrieved shall petition for review of such order within such ten-day period, or any extension thereof, the order of the referee shall become final. Upon application of any party in interest, the execution or enforcement of the order complained of may be suspended by the court upon such terms as will protect the rights of all parties in interest."
 The italicized words were added by the 1960 amendment to this section. 74 Stat. 528 (1960).
 
 
 [8]
 S.Rep.No. 1689, 86th Cong., 2d Sess.; 1960 U.S. Code Congressional and Administrative News, Vol. 2, pp. 3194-3195
 
 
 [9]
 See St. Regis Paper Co. v. Jackson, 369 F.2d 136 (5 Cir. 1966) (and cases cited therein); In re Watkins, 197 F.Supp. 500 (W.D.Va.1961)
 
 
 [10]
 11 U.S.C. § 715:
 "Whenever notice is to be given under this chapter, the court shall designate, if not otherwise specified hereunder, the time within which, the persons to whom, and the form and manner in which the notice shall be given. Any notice to be given under this chapter may be combined, whenever feasible with any other notice or notices under this chapter."
 
 
 [11]
 See 8 Collier, supra note 6, ¶ 3.28
 
 
 [12]
 11 U.S.C. § 93(k):
 "Claims which have been allowed may be reconsidered for cause and reallowed or rejected in whole or in part according to the equities of the case, before but not after the estate has been closed."
 
 
 [13]
 Rule 60(b), Fed.R.Civ.Proc., 28 U.S.C. provides in pertinent part:
 "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. * * *"
 This rule is made applicable to bankruptcy proceedings by General Order 37, 11 U.S.C. following § 53.
 
 
 [14]
 133 F.Supp. 739 (D.N.J.1955)
 
 
 [15]
 151 F.2d 994 (7 Cir. 1945)
 
 
 [16]
 Ackerman v. United States, 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950); Federal Deposit Ins. Corp. v. Alker, 234 F.2d 113 (3 Cir. 1956); 7 Moore, Federal Practice ¶ 60.27[2] (2d ed. 1966)
 
 
 [17]
 See, e. g., Flett v. W. A. Alexander & Co., 302 F.2d 321 (7 Cir.), cert. denied, 371 U.S. 841, 83 S.Ct. 71, 9 L.Ed.2d 77 (1962); Annat v. Beard, 277 F.2d 554 (5 Cir. 1960); Consolidated Gas & Equip. Co. v. Carver, 257 F.2d 111 (10 Cir. 1958); 7 Moore, supra note 16, ¶ 60.27[1]