In the Matter of **CHARMAR INVESTMENT CO., Alleged Bankrupt.**
**CITY NATIONAL BANK & TRUST CO. et al., Petitioners-Appellees,**

v.

**CHARMAR INVESTMENT CO., Alleged Bankrupt-Appellant.**

No. 72–1503.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 28, 1972.

Decided and Filed March 22, 1973.

John E. Palcich, Columbus, Ohio, for alleged bankrupt-appellant.

Bradley Hummel, Columbus, Ohio, for petitioners-appellees; R. T. O'Brien, Folkerth, Calhoun, Webster, Maurer & O'Brien, Columbus, Ohio, on brief, for Charles L. Adrian; Gingher & Christensen, Columbus, Ohio, on brief, for Marlen Radbill; David H. Putnam, Columbus, Ohio, on brief, for City National Bank & Trust Co.

Before PHILLIPS, Chief Judge, and CELEBREZZE and PECK, Circuit Judges.

PECK, Circuit Judge.

On May 3, 1971, a creditors' petition for the involuntary bankruptcy of Charmar Investment Company, a small closely-held corporation, was filed in the District Court. It was contended that appellant conveyed its major asset [1] to two shareholders and officers of appellant for insufficient consideration, thereby constituting a preference to the grantees. On June 25, 1971, the Referee granted a motion to dismiss the petition for failure to sufficiently allege an act of bankruptcy. On July 6, 1971, the Referee ordered the dismissal set aside and permitted the filing of an amended petition. At the same time, the Referee denied a motion to dismiss the amended petition on the grounds that it merely paraphrased Section 60 of the Bankruptcy Act (11 U.S.C. § 96), which defines a preferential transfer. Jurisdictional questions subsequently developed and, in April 1972, the District Court conducted a jurisdictional hearing and found the appellees qualified as creditors. This appeal followed.

Charmar Investment Company was started by appellees Adrian and Radbill to operate car washes. Later, realizing the business was in trouble, they sold their shares of stock to a Mr. Zingarelli for one dollar in accordance with the terms of a written agreement of October 1969. A provision of that agreement required Charmar to issue non-interest bearing promissory notes to appellees Adrian and Radbill in the sum of $14,802.48, payable at stated amounts and times over the next four years.[2] After execution of the agreement, Zingarelli became President of Charmar and in that capacity he issued notes to Adrian and Radbill. Adrian and Radbill now claim that consideration for these notes was the deferment of their claims on Charmar for unpaid services, e. g., salary and expenses, and their oral agreement to remain personally liable on company debts for one year after the sale. These notes, they contend, give them creditor status to place Charmar in bankruptcy.

It also appears that Adrian and Radbill had obtained a $60,000 loan in May 1968 from City National Bank & Trust Co. of Columbus, Ohio. Although the original note is not in the record, it allegedly, without challenge, was signed by the corporation and by Adrian and Radbill individually, and within a year, all of the loan except for $9,000 was repaid and the bank agreed to extend the loan balance through a series of ninety-day notes. When the September 1970 note came up for renewal in December 1970, appellees Adrian and Radbill were apparently mindful that their obligation of October 1969 to guarantee the notes for a one-year period expired in October 1970 and refused to guarantee the proposed renewal note. The Bank then declined to renew the note without the guarantees. Thereupon in May 1971, the petition in bankruptcy was filed.

Section 24 of the Bankruptcy Act (11 U.S.C. § 47) provides that interlocutory orders in proceedings in bankruptcy are appealable. The Act makes

---

1. The corporation owned and operated a car wash in Westerville, Ohio. The record does not disclose any other operation or asset.

2. The apparent effect of this arrangement is that Zingarelli avoided personal liability since the shares were transferred to Zingarelli and the notes came from Charmar.

the distinction between "proceedings" and "controversies", the latter being non-appealable. However, the distinction has always been obscure. In re Imperial "400" National, Inc., 391 F.2d 163, 168 (3rd Cir. 1968). Generally, in this context "controversies" involve disputes between trustees and third parties over title to the bankrupt estate's property. 2 Collier on Bankruptcy § 24.28 (14th ed. 1971) (and cases cited therein). The order here concerns a question between the bankrupt and a creditor in the ordinary course of the administration of the bankrupt's estate and therefore constitutes a "proceeding in bankruptcy." However, not every interlocutory order entered in a "proceeding in bankruptcy" is automatically appealable. The order must dispose of some asserted right. Therefore, an order which is not "a formal exercise of judicial power affecting the asserted rights of a party" is not appealable. 2 Collier on Bankruptcy § 24.39 (14th ed. 1971); see, also, Cope v. Aetna Finance Company of Maine, 412 F.2d 635, 639 (1st Cir. 1969). Here the District Court has exercised such power regarding an issue in dispute between the parties, i. e., qualification as creditors, and thus the order may be considered appealable.

■ A question also arises as to whether the District Court has jurisdiction to consider a proposed amendment to the involuntary petition after a motion to dismiss that petition has been granted. The original petition was filed on May 3, 1971, and was dismissed on June 25, 1971, for insufficient allegations to justify bankruptcy. In the order of dismissal, the Referee noted that a motion to amend the petition had been presented and filed, and ordered a hearing on the motion for July 1, 1971. On July 6, 1971, the Referee granted a motion to amend the petition.

Kroell v. New York Ambassador, 108 F.2d 294 (2nd Cir. 1939), held that omitting leave to amend from an order which dismissed an original involuntary bankruptcy petition for insufficiency did not deprive the bankruptcy court of its jurisdiction to allow a later amendment. Even assuming but without deciding that the notation in the order does not constitute leave to amend, it is clear that the bankruptcy court has jurisdiction in view of its general equity powers to set aside an order dismissing the petition for defects in the pleading and later to reinstate the proceedings to permit an amendment of the pleadings. 2 Collier on Bankruptcy § 18.24 (14th ed. 1971).

■■ Appellant first claims that (1) it was improper for the Court to admit the amended petition more than four months after the alleged act of bankruptcy and (2) the amended petition contained insufficient facts to allege a bankruptcy. We find that Section 39(c) of the Bankruptcy Act[3] disposes of these claims. Amended in 1960, the Act provides that a petition for review, or a petition to extend the time for filing a petition for review, must be filed within ten days after entry of a referee's order. The 1960 amendment provided a clarification and made compulsory the ten-day limitation. It is clear that the intent was to provide finality to a referee's order unless there was timely direct

---

3. 11 U.S.C. § 67(c) provides as follows: "(c) A person aggrieved by an order of a referee may, within ten days after the entry thereof or within such extended time as the court upon petition filed within such ten-day period may for cause shown allow, file with the referee a petition for review of such order by a judge and serve a copy of such petition upon the adverse parties who were represented at the hearing. Such petition shall set forth the order complained of and the alleged errors in respect thereto. Unless the person aggrieved shall petition for review of such order within such ten-day period, or any extension thereof, the order of the referee shall become final. Upon application of any party in interest, the execution or enforcement of the order complained of may be suspended by the court upon such terms as will protect the rights of all parties in interest."

attack.[4] Since the amendment was enacted, courts have required strict compliance.[5] Appellant has failed to file such a petition for review within the time specified. In fact, the record does not reveal that any petition for review has ever been filed. An appeal to this Court cannot be substituted for a petition for review, and consequently, appellant's claims must be rejected.

■ Appellant also contends that the admission of certain evidence constituted error. Four days after the close of the jurisdictional hearing, the District Judge advised counsel that he proposed to admit the $9,000 ninety-day notes which were executed in November 1969, March 1970 and June 1970.[6] Appellant requested a hearing on the matter and on April 19, 1972, a second hearing was held. At the hearing appellant objected to the admission of the notes based on the absence of the original $60,000 note which it felt was necessary to fully understand the entire transaction. It asked for, and was refused, additional time to subpoena the original note. The Court then issued its findings that same day. On April 24, 1972, the Court issued an order stating that its opinion was not dependent upon the evidence in question but offered appellant the opportunity to challenge the evidence prior to trial. Appellant now complains that the notes were produced without sworn testimony and thus their admission constituted a denial of due process.

We agree with appellee that the evidence in question was not necessary in order for the District Court to reach its conclusion. It is clear that both Radbill and Adrian obligated themselves personally for a period in excess of one year after the October 1969 purchase agreement for the obligation of appellant, and thus may in fact be required to pay such obligation in the event the alleged bankrupt is unable to do so. The September 1970 note and the proffered December 1970 note establish that fact. Testimony by an employee of the Bank indicates that the December 1970 note was rejected "primarily because Messrs. Adrian and Radbill had refused to sign individually on our new note which was the way it was set up, so consequently, we wouldn't accept." Both Exhibit B, entitled Schedule of Debts, and Exhibit C, entitled Schedule of Payments, to the October 1969 purchase agreement list a $9,000 note outstanding to City National Bank. Although it would be expected that admission of the original note would clarify the situation with reference to the $9,000 note, we do not find its admission as necessary to the determination of the status of Adrian and Radbill as creditors. We also find that the admission of the November 1969, March 1970 and June 1970 notes, without the laying of a proper foundation, is error. However, we do not conclude the admission had prejudicial effect.

■ Appellant also disputes the District Court's findings that appellees Adrian and Radbill qualify as creditors under Section 59(b) of the Bankruptcy Act (11 U.S.C. § 95(b)). That section provides as follows:

"(b) Three or more creditors who have provable claims not contingent as to liability against a person, amounting in the aggregate to $500 in excess of the value of any securities held by them, or, if all of the creditors of the person are less than twelve in number,

4. S.Rep.No.1689, 86th Cong., 2d Sess.; 1960 U.S.Code Congressional and Administrative News, Vol. 2, pp. 3194–3195.

5. In re Imperial "400" National, Inc., 391 F.2d 163 (3rd Cir. 1968); St. Regis Paper Co. v. Jackson, 369 F.2d 136 (5th Cir. 1966); In re Acme Furnace Fitting Co., 302 F.2d 318 (7th Cir.), cert. denied, Biggs v. Acme Furnace Fitting Co., 371 U.S. 853, 83 S.Ct. 89, 9 L.Ed.2d 88, reh. denied, 371 U.S. 906, 83 S.Ct. 209, 9 L.Ed.2d 168 (1962); Goff v. Pfau, 418 F.2d 649 (8th Cir. 1969), cert. denied, 398 U.S. 931, 90 S.Ct. 1830, 26 L.Ed.2d 97, reh. denied, 399 U.S. 917, 90 S.Ct. 2212, 26 L.Ed.2d 577 (1970); In re Abilene Flour Mills Co., 439 F.2d 937 (10th Cir. 1971).

6. The September 1970 and proposed December 1970 notes were already part of the record.

then one or more of the creditors whose claim or claims equal that amount, may file a petition to have him adjudged a bankrupt; but the claim or claims, if unliquidated, shall not be counted in computing the number and the aggregate amount of the claims of the creditors joining in the petition, if the court determines that the claim or claims cannot be readily determined or estimated to be sufficient, together with the claims of the other creditors, to aggregate $500, without unduly delaying the decision upon the adjudication."

The question before us then is whether the October 1969 notes of the appellant, arising from the October 1969 purchase agreement and made payable to Adrian and Radbill, qualify them as "creditors who have provable claims not contingent as to liability. . . ." It is clear that the ninety-day notes will not support a finding of creditor qualification under Section 59(b). The September 1970 note remains outstanding and, as co-signers, Adrian and Radbill are liable to the Bank for the note. They are considered sureties and their claims would be considered contingent. 3 Collier on Bankruptcy § 59.09 [2] (14th ed. 1971).

 As regards the October 1969 notes, however, the agreement of Radbill and Adrian to remain personally liable on the ninety-day notes for one year after the October 1969 purchase agreement would appear to constitute adequate consideration for those October notes.[7] The agreement provides for a benefit to Charmar in exchange for Charmar's promise to provide and pay on the notes it had issued to the parties and thus comports with the traditional concept of consideration. See, Irwin v. Lombard University, 56 O.S. 9 (1887). Thus, appellant's contention that the October notes lacked consideration must fail and, accordingly, appellees Adrian and Rad-

bill qualify as creditors within Section 59(b).[8]

The judgment of the District Court is affirmed.

---

7. It seems clear that the real purpose of the notes issued by Charmar was to reimburse Adrian and Radbill for the sale of the stock to Zingarelli; however, we do not find it necessary to further consider this aspect.

8. There is no contention that appellee Bank is not a creditor within Section 59(b).