505 F.2d 1199
 In the Matter of DIAMOND DOOR COMPANY, a California
corporation, Alleged Bankrupt-Appellant,
v.
LANE-STANTON LUMBER COMPANY, a California corporation, et
al., Petitioning Creditors-Appellees.
 No. 73-1590.
 United States Court of Appeals, Ninth Circuit.
 Oct. 21, 1974.
 
 Lawrence A. Diamant, Robinson & Wolas, Los Angeles, Cal., for alleged bankrupt-appellant.
 Barnard F. Klein, Beverly Hills, Cal., for petitioning creditors-appellees.
 Before HAMLEY and DUNIWAY, Circuit Judges, and NEILL, District judge.*
 OPINION
 HAMLEY, Circuit Judge:
 
 
 1
 This is an appeal from a partial adjudication by the district court under Rule 56(d), F.R.Civ.P., entered in an involuntary bankruptcy proceeding. The alleged bankrupt, Diamond Door Company (Diamond), appeals from a district court order determining that Diamond had committed an act of bankruptcy as defined in section 3(a) of the Bankruptcy Act, 11 U.S.C. 21(a). We affirm.
 
 
 2
 On November 24, 1970, Lane-Stanton Lumber Company and other creditors of Diamond filed a petition to have Diamond adjudged an involuntary bankrupt. Petitioners alleged that Diamond, while insolvent and within four months of bankruptcy, committed, on two occasions, the second act of bankruptcy, a preferential transfer.[1] For present purposes we need notice only the alleged act of bankruptcy occurring on July 27, 1970. Petitioners claim that on that date Diamond, while insolvent, executed and delivered to Mercury Hardwood Lumber Company (Mercury), a creditor, a financing statement and security agreement on the physical assets of Diamond to secure a previously-existing unsecured account 'with the intent to prefer such creditor over his other creditors.' Diamond denied the allegations of the involuntary petition and demanded a trial by jury in accordance with section 19(a) of the Bankruptcy Act, 11 U.S.C. 42(a).
 
 
 3
 The district court thereafter referred the proceeding, pursuant to Rule 53, F.R.Civ.P., to a referee in bankruptcy 'as Special Master' for the specific purpose of hearing the evidence and reporting to the court, pursuant to Rule 53(e)(3) his findings upon the issues in respect to the insolvency of, and claimed act of bankruptcy by, Diamond.
 
 
 4
 In answer to petitioners' request for admissions, Diamond thereafter admitted that, on July 24, 1970, it had executed a financing statement and security agreement in favor of Mercury by which Diamond granted a security interest in all of Diamond's property, consisting of goods, chattels, tangible and intangible properties, including parts, machinery, equipment, fixtures, fittings and tools. Diamond further admitted that the security interest was given to secure a promissory note of forty thousand dollars and all other or additional indebtedness due or to become due. Diamond also admitted that, prior to the granting of this security interest, Mercury had held no security for this forty thousand dollar 'indebtedness,' except that the company had a right to stop any goods in transit under section 2705 of the California Commercial Code.
 
 
 5
 After an evidentiary hearing before the Special Master, the latter filed a report covering both the issues of preference and insolvency. With reference to the preference the Special Master found the facts to be as admitted, except that the Special Master did not find that, in addition to the forty thousand dollar promissory note, the security was given to secure, as stated in the security agreement, 'all other or additional indebtedness due or to become due.' The Special Master also concluded that:
 
 
 6
 'The effect of the granting of the security interest was to give Mercury Hardwood Lumber Company a greater percentage of its unsecured indebtedness than other unsecured creditors of Diamond Door Company.'
 
 
 7
 Finally, the Special Master found that, at the time this preference was given, Diamond was insolvent.
 
 
 8
 Petitioners thereafter moved in the district court for summary judgment pursuant to Rule 56 on both the preference and the insolvency issues. In making this motion petitioners relied upon the pleadings, records and files, especially the answers to requests for admissions, the report of the Special Master, the statement of reasons and memorandum of points and authorities filed in support of the motion, and the proposed summary judgment and proposed findings of fact and conclusions of law filed with the motion.
 
 
 9
 Diamond filed points and authorities in opposition to the motion for summary judgment, but without supporting affidavits or other supporting documents. The position asserted by Diamond was exclusively legal in nature, confined primarily to the argument that it was entitled to a jury trial on all issues, and that in such a trial the findings of the Special Master are not conclusive, but merely evidence to be read to the jury.
 
 
 10
 In its memorandum opinion granting in part, and denying in part, the motion for summary judgment, the district court held, in effect, that as to the issue of preferential transfer there was, assuming insolvency, no genuine issue of material fact, and that Diamond had made a preferential transfer as described in 11 U.S.C. 96(a).[2]
 
 
 11
 The district court based this finding upon Diamond's admissions, described above, and upon the report of the Special Master. As to the issue of insolvency, the district court determined that there was a genuine issue of material fact. The court therefore granted the motion for summary judgment as to the issue of preferential transfer and denied it as to the issue of insolvency.[3] Diamond appeals.
 
 
 12
 We note at the outset that while the judgment under review is labeled 'partial summary judgment,' it is, in reality, an order under Rule 56(d), where judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary. Under Rule 56(d), where such is the case, the court is to make an order specifying the facts that appear without substantial controversy, and directing such further proceedings in the action as are just. See 6 Moore, Federal Practice 56.20 (3.-4) at 2759-2760 (2d Ed.). The 'partial summary judgment' here under review is, in effect, a Rule 56(d) order, because it determines the issue of preferential transfer on evidence which the court believed to be without substantial controversy, and reserves the insolvency issue for trial.
 
 
 13
 Rule 56(d) orders are interlocutory, because they do not decide the whole case and therefore are not final decisions. See 28 U.S.C. 1291; In re Merle's, Inc., 481 F.2d 1016, 1018 (9th Cir. 1973). But this court nevertheless has jurisdiction because this is a proceeding in bankruptcy, as to which courts of appeal have jurisdiction to review either interlocutory or final decisions. See section 24(a) of the Bankruptcy Act. 11 U.S.C. 47(a).[4]
 
 
 14
 On the merits, Diamond argues that the district court erred in deciding as a matter of law that assuming insolvency, Diamond had made a preferential transfer on July 27, 1970. The error, Diamond urges, is that summary adjudication under Rule 56 contravenes Diamond's right to a jury trial under section 19(a) of the Bankruptcy Act, 11 U.S.C. 42(a).[5]
 
 
 15
 It is established law that the Seventh Amendment right to a trial by jury does not preclude the granting of a summary judgment where there is no genuine issue of material fact. See Sartor v. Arkansas Gas Corp., 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967 (1944); Fidelity & Deposit Co. of Maryland v. United States, 187 U.S. 315, 23 S.Ct. 120, 47 L.Ed. 194 (1902); Lindsey v. Leavy, 149 F.2d 899, 902 (9th Cir. 1945). See also Burnham Chemical Co. v. Borax Consolidated, 170 F.2d 569, 573 (9th Cir. 1948).[6]
 
 
 16
 Since bankruptcy proceedings are equitable in nature, the right to trial by jury therein derives, not from the Seventh Amendment, but from section 19(a) of the Bankruptcy Act, 11 U.S.C. 42(a). In re Midtown Contracting Co., 243 F. 56, 63-65 (2d Cir. 1917). But section 19(a) accords no more absolute right to trial by jury in bankruptcy proceedings than does the Seventh Amendment in other civil proceedings. Thus, if the summary judgment procedure of Rule 56 is applicable in a bankruptcy proceeding, as it is applicable in a Seventh Amendment jury trial, the section 19 right to trial by jury will not stand in the way of a proper application of Rule 56.
 
 
 17
 Rule 81, F.R.Civ.P., defines, in general, the applicability of the federal rules. Subdivision (a)(1) of Rule 81 provides that the rules 'do not apply to proceedings in bankruptcy . . . except in so far as they may be made applicable thereto by rules promulgated by the Supreme Court of the United States.' The Supreme Court's General Orders and Forms in Bankruptcy are 'rules promulgated by the Supreme Court' within the meaning of Rule 81(a)(1). See Benitez v. Anciani, 127 F.2d 121 (1st Cir. 1942). General Orders in Bankruptcy, No. 37, provides, in part:
 
 
 18
 'In proceedings under the Act the Rules of Civil Procedure for the District Courts of the United States shall, in so far as they are not inconsistent with the Act or with these general orders, be followed as nearly as may be.'[7]
 
 
 19
 While General Bankruptcy Order No. 37 was in effect, Rule 56 was frequently deemed applicable to bankruptcy cases. See Advisory Committee's Note to Rule 756, Bankruptcy Rules and Official Bankruptcy Forms, Special Supplementary Pamphlet for use with 11 U.S.C.A. See also Britt v. Damson, 334 F.2d 896, 902 (9th Cir. 1964); Yorke v. Harry's Department Stores, 343 F.2d 814 (5th Cir. 1965). We therefore hold that the summary judgment procedure of Rule 56 is applicable in the bankruptcy proceeding before us, notwithstanding the jury demand made under section 19(a) of the Bankruptcy Act, 11 U.S.C.A. 42(a).
 
 
 20
 This brings us to Diamond's contention that where there is a demand for a jury trial, the Special Master's report may not be utilized as a basis for granting summary judgment. Diamond predicates this argument upon Rule 53 (e)(3), F.R.Civ.P., pertaining to Masters. That rule provides that in actions to be tried by a jury the Master shall not be directed to report the evidence to the court. Instead, the rule directs that:
 
 
 21
 'His findings upon the issues submitted to him are admissible as evidence of the matters found and may be read to the jury, subject to the ruling of the court upon any objections in point of law which may be made to the report.'
 
 
 22
 We assume, without deciding, that this provision of Rule 53(e)(3), precludes the use of a Special Master's findings as a basis for a summary judgment in a bankruptcy proceeding in which a jury trial has been demanded.
 
 
 23
 However, insofar as the issue of preferential transfer is concerned, petitioners' motion for summary judgment was based not alone upon the Special Master's report, but also upon other documents, including Diamond's answer to the requests for admissions. Likewise, the decision of the district court, granting a Rule 56(d) order, insofar as it deals with the preferential transfer issue, is predicated both on the Special Master's report, and upon Diamond's answers to the requests for admissions. If those answers to admissions establish, beyond dispute, that Diamond made a preferential transfer on July 24, 1970, then the Rule 56(d) order is supportable without reference to the Special Master's report.
 
 
 24
 In order for there to be a preferential transfer under section 60(a) of the Bankruptcy Act, 11 U.S.C. 96(a), the following elements must be present: (1) a transfer of any of the property of a debtor, (2) for the benefit of a creditor, (3) for or on account of an antecedent debt, (4) made or suffered by such debtor while insolvent, (5) within four months before the filing by or against him of the petition initiating a proceeding under the Act, (6) the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class.
 
 
 25
 The fourth of these elements has been reserved for jury trial. Diamond concedes on appeal that it has admitted that it granted a security interest to a creditor, Mercury, to secure a promissory note and other additional indebtedness due or to become due. This would appear to establish the presence of the first and second elements listed above. While Diamond does not expressly concede the admission, it is apparent that Diamond has admitted the presence of the fifth listed element, that is, that the transfer occurred within four months before the filing of the instant petition.
 
 
 26
 Diamond contends, however, that it has not admitted the presence of the third and sixth elements listed above. The third element is that the transfer was for or on account of an antecedent debt. Diamond asserts that it is not established that it gave the security interest on account of an antecedent debt, arguing that there is no evidence in the record indicating why it was given. Diamond also argues that it is not unreasonable to assume that the granting of the security interest enabled a continuing future relationship between Diamond and this creditor, whereby Diamond could make future purchases from Mercury.
 
 
 27
 In its answers to requests for admissions, Diamond admitted that the security interest it gave to Mercury was given to secure a promissory note of forty thousand dollars and all other or additional indebtedness due or to become due. Diamond also admitted that prior to the granting of such security interest, Mercury had held no security for this forty thousand dollar 'indebtedness,' except the right to stop any goods in transit under section 2705 of the California Commercial Code.
 
 
 28
 This admission indicates beyond dispute that at least to the extent of forty thousand dollars, the security interest was given on account of an unsecured antecedent debt. It may be true that the security interest was also given to secure additional indebtedness to be incurred in the future, and that this enabled Diamond to continue a business relationship with Mercury. But this additional purpose to be served by the security interest in no way undermines the fact that, at least to the extent of forty thousand dollars, the security interest was given to secure an unsecured antecedent debt. We accordingly hold that the third element of a preferential transfer was present and beyond factual dispute in this case.
 
 
 29
 The sixth element which must be present to constitute a preferential transfer, as listed above, is that the effect of the transfer must be to enable the creditor (here Mercury) to obtain a greater percentage of its debt than some other creditor of the same class.
 
 
 30
 Diamond submits that this element is not beyond dispute in this case because the existence of creditors of the same class as that of Mercury is an issue not yet before the court or a jury. Diamond asserts that there are not now any facts in evidence concerning this issue.
 
 
 31
 We think Diamond is mistaken. Diamond has admitted that Mercury was an unsecured creditor at the time of the transfer in question. The transfer of a security interest was as to 'all of diamond Door Co.'s property consisting of goods, chattels, tangible and intangible properties including parts, machinery, equipment, fixtures, fittings and tools.' Thus, if there were any other unsecured creditors in addition to Mercury, the effect of the transfer was to enable Mercury to obtain a greater percentage of its debt than the other unsecured creditors.
 
 
 32
 The pleadings establish that there were other unsecured creditors of Diamond in addition to Mercury. Petitioners alleged, in paragraph eight of their petition, that Diamond is indebted to petitioner Lane-Stanton Lumber Company in the sum of $798.88, 'no part of which has been paid and, for payment of which your petitioner holds no security of any kind whatsoever.' Petitioners further alleged, in paragraph nine of their petition, that Diamond is indebted to petitioner Simmons Hardwood Lumber in the sum of $1,757.93, 'no part of which has been paid, and for payment of which your petitioner holds no security of any kind whatsoever.' In its answer to this petition, Diamond did not deny paragraphs eight and nine.
 
 
 33
 We therefore conclude that the sixth element of a preferential transfer, as listed above, was present and beyond factual dispute in this case.
 
 
 34
 Diamond's final point on appeal brings into question whether it was an abuse of discretion for the district court to refer this matter to the referee as a Special Master, under Rule 53. Diamond does not appear to argue that Rule 53 is not applicable in bankruptcy proceedings, but contends that it should not have been applied under the circumstances of this case. In this connection Diamond calls attention to a part of Rule 53(b), quoted in the margin.[8] Diamond asserts that the issues and facts that were heard by the Special Master were not of the complexity that required expertise. Diamond also calls attention to the fact that the order of preference made in this case was ex parte and without notice or hearing.
 
 
 35
 Insofar as the preferential transfer issue is concerned this argument is irrelevant because we have decided that issue without reference to the Special Master's report. But upon the remand of the proceedings there will presumably be a jury trial on the issue of insolvency. At that trial it is likely that the report of the Special Master, bearing upon the question of insolvency, will be read to the jury, unless excluded on some proper ground. See Rule 53(e)(3), F.R.Civ.P. Thus, save for the circumstances noted below, it would be appropriate for us to consider this issue.
 
 
 36
 The circumstance to which we refer is Diamond's failure to preserve a district court record which entitles the company to raise this question on appeal. Insofar as we can determine from our reading of the record, Diamond did not move in the district court, or before the Special Master, that the order of reference be vacated. Nor did it, in any other manner, indicate an objection to the reference of the matter to a Special Master, until this appeal.
 
 
 37
 Except in the case of jurisdictional questions[9] or where particular circumstances indicate that injustices might otherwise result or where public policy requires,[10] this court declines to consider arguments for reversal that were not presented in the district court. See also Maricopa County v. American Pipe and Construction Co., 431 F.2d 1145 (9th Cir. 1970); Westinghouse Electric Corporation v. Weigel, 426 F.2d 1356 (9th Cir. 1970).
 
 
 38
 The question as to the reference of this case to a Special Master is not jurisdictional, nor do we perceive how such reference worked an injustice or contravened public policy. We therefore decline to consider this question on the merits.
 
 
 39
 Affirmed.
 
 
 
 *
 The Honorable Marshall A. Neill, United States District Judge for the Eastern District of Washington, sitting by designation
 
 
 [1]
 Section 3(a) of the Bankruptcy Act, 11 U.S.C. 21(a), provides in part:
 '(a) Acts of bankruptcy by a person shall consist of his having . . . (2) made or suffered a preferential transfer, as defined in subdivision a of section 60 of this Act.'
 
 
 [2]
 Consistent with this decision the district court entered findings of fact, conclusions of law, and 'partial summary judgment' determining that:
 'if Diamond Door Co. was insolvent at the time of its granting the security interest to Mercury Hardwood Lumber Company, that Diamond Door Co. is guilty of an act of bankruptcy at that time and within four months of the filing of the involuntary petition of creditors herein.'
 
 
 [3]
 The effect of this judgment is to reserve the question of insolvency for a jury trial
 
 
 [4]
 Although the parties do not address the issue, we are of the view that the matter before us constitutes 'proceedings in bankruptcy' as to which interlocutory appeals are permissible under section 24(a) of the Bankruptcy Act, 11 U.S.C. 47(a), and not 'controversies arising in proceedings in bankruptcy,' as to which, under that section, review may be had only of final decisions. See In re National Finance & Mortgage Corp., 96 F.2d 74 (9th Cir. 1938); Morehouse v. Pacific Hardware & Steel Co., 177 F. 337 (9th Cir. 1910); In re Charmar Investment Co., 475 F.2d 560, 563 (6th Cir. 1973); Theard v. Fidelity & Deposit Co. of Maryland, 202 F.2d 880, 881-882 (5th Cir. 1953); 2 Collier, Bankruptcy 24.12 at 736-738 (14th Ed.)
 
 
 [5]
 Section 19(a) reads:
 '(a) A person against whom an involuntary petition has been filed shall be entitled to have a trial by jury in respect to the question of his insolvency, except as here in otherwise provided, and of any act of bankruptcy alleged in such petition to have been committed, upon filing a written application therefor at or before the time within which an answer may be filed. If such application is not filed within such time, a trial by jury shall be deemed to have been waived.'
 
 
 [6]
 The general reasoning behind this holding is that summary judgment is granted as a matter of law where there is no genuine issue of material fact, and, therefore, the province of the jury, fact finding, is not invaded
 
 
 [7]
 General Order No. 37 was abrogated effective October 1, 1973, which was long after the Rule 56(d) order was entered herein on June 27, 1972. New Bankruptcy Rules and Official Bankruptcy Forms, prescribed by the Supreme Court, became effective on October 1, 1973. See Special Supplementary Pamphlet for Use with 11 U.S.C.A. Rule 756 of the new rules provides: 'Rule 56 of the Federal Rules of Civil Procedure applies in adversary proceedings.' However, the proceeding before us is not an 'adversary proceeding,' as that term is defined in new Rule 701, because 'adversary proceedings' do not include contested petitions such as we have before us. Nevertheless, through the interaction of new Rules 121 and 914, the summary judgment procedure of Rule 56 may still be applicable to contested proceedings. See 6 Moore, Federal Practice 56.06-1 at 2080 (2d Ed.)
 
 
 [8]
 The part of Rule 53(b) relied upon by Diamond reads:
 'A reference to a master shall be the exception and not the rule. In actions to be tried by a jury, a reference shall be made only when the issues are complicated; . . .'
 
 
 [9]
 E.g., Horner v. Ferron, 362 F.2d 224, 232 (9th Cir. 1966)
 
 
 [10]
 E.g., Nuelson v. Sorensen, 293 F.2d 454, 462 (9th Cir. 1961)