[No. 53196-0. En Banc. March 30, 1989.]

EDWARD LaMON, ET AL, *Petitioners,* v. BETTY BUTLER, ET AL, *Respondents.*

*Jack L. Burtch,* for petitioners.

*Brown, Edwards, Lewis & Janhunen,* by *Curtis M. Janhunen,* for respondents.

*P. Cameron DeVore, Marshall J. Nelson,* and *Stuart R. Dunwoody* on behalf of Allied Daily Newspapers, amici curiae for respondents.

DURHAM, J.—The plaintiffs in this case brought a defamation action against a newspaper and one of its reporters. The trial court dismissed the plaintiffs' cause of action by summary judgment. The Court of Appeals affirmed, holding that the plaintiffs had failed to make a prima facie showing of the defendants' fault. We affirm.[1]

On July 2, 1972, an altercation took place between Lorraine LaMon and John Peterson, a summer intern reporter for The Daily World. Both Lorraine LaMon and her husband, Edward, were charged with assault. Edward LaMon's count was dismissed at trial, but Lorraine LaMon was convicted in the Westport Municipal Court.

Lorraine LaMon appealed to the Grays Harbor County Superior Court. That appeal was dismissed by stipulation of the parties on November 10, 1972. The order of dismissal reads as follows: "It is ordered that the above action be dismissed with prejudice. It is further ordered, adjudged and decreed that the defendants pay all costs in the matter." A copy of this order is included as an appendix.

At that time, Betty Butler was responsible for reporting news in the Westport area for The Daily World, a newspaper of general circulation in Grays Harbor County. Butler learned of the Superior Court's dismissal of Lorraine LaMon's appeal by calling the county clerk's office. A clerk read the order to Butler over the telephone. Butler's understanding of the order was that it "was not the type of dismissal that negated the judgment." Butler also discussed the effect of that order with the Westport City Attorney involved in Lorraine LaMon's appeal. According to Butler's deposition, the city attorney in large part confirmed her

---

[1]This court originally issued an opinion which affirmed the lower court decisions. *LaMon v. Butler,* 110 Wn.2d 216, 751 P.2d 842 (1988). We granted the LaMons' motion for reconsideration and the case was re-argued. Today's opinion supersedes our earlier opinion, although the analysis remains largely unchanged.

interpretation. Butler indicated that the city attorney told her that the dismissal in superior court "had very little to do with the [municipal court] verdict per se".

The assault incident described above provided, in part, the basis of a lawsuit filed in 1974 by the LaMons against Peterson and the Westport Chief of Police, John Regan. The LaMons alleged that Peterson executed a false complaint and that Regan falsely caused them to be arrested. They also alleged that Regan violated their civil rights by failing to provide equal police protection to them over a number of years. The LaMons later dismissed Peterson from the case. They eventually recovered a $27,500 judgment against Regan on the civil rights claim in 1978. The judgment was affirmed on appeal in 1980.

Regan was not covered by Westport's liability insurance due to a temporary lapse in the policy's coverage. At a meeting of the Westport City Council on September 24, 1979, several citizens proposed that the City help Regan post a bond and pay his legal costs. Butler attended this meeting and wrote an article about it the next day. In that article, she included as background material the fact that Lorraine LaMon had been convicted of assault in municipal court, but she did not mention the superior court dismissal or its effect on the municipal court conviction. Butler made similar statements in other articles that she wrote between 1974 and 1980 concerning this litigation.[2]

The LaMons filed a complaint for defamation against Butler and The Daily World in Grays Harbor County Superior Court on September 24, 1981. The LaMons alleged that Butler's articles were defamatory by implying that Lorraine LaMon remained convicted of assault. They

---

[2]The parties have focused their attention primarily on the September 1979 article. The other articles written in whole or part by Butler were dated July 10, 1974, August 13, 1974, September 15, 1975, October 20, 1978, September 11, 1979, and April 17, 1980. Because the first five articles were published more than 2 years before the LaMons filed their complaint, the statute of limitations bars any action on them. See RCW 4.16.100(1). The April 1980 article contains the same misstatement that appeared in the September 1979 article.

also attempted, unsuccessfully, to disqualify the county's two Superior Court Judges by filing separate affidavits of prejudice. The trial court entered a summary judgment in favor of the defendant on December 22, 1983, dismissing the LaMons' cause of action. The Court of Appeals affirmed the dismissal, holding that the LaMons had failed to make a sufficient prima facie showing of the defendants' fault.[3] *LaMon v. Butler*, 44 Wn. App. 654, 722 P.2d 1373 (1986). We granted the LaMons' petition for review.

SUMMARY JUDGMENT

When a defendant in a defamation action moves for summary judgment, the plaintiff has the burden of establishing a prima facie case on all four elements of defamation: falsity, an unprivileged communication, fault, and damages. *See Guntheroth v. Rodaway*, 107 Wn.2d 170, 175, 727 P.2d 982 (1986); *Mark v. Seattle Times*, 96 Wn.2d 473, 486, 635 P.2d 1081 (1981), *cert. denied*, 457 U.S. 1124 (1982). The prima facie case must consist of specific, material facts, rather than conclusory statements, that would allow a jury to find that each element of defamation exists. *Herron v. Tribune Pub'g Co.*, 108 Wn.2d 162, 170, 736 P.2d 249 (1987); *Guntheroth*, at 175. The nonmoving party is entitled to have the evidence viewed in a light most favorable to him and against the moving party. *Herron*, at 170.

It is well settled that the standard of fault in defamation cases depends on the nature of the plaintiff. If the plaintiff is a public figure or public official, he must show actual malice. If, on the other hand, the plaintiff is a private figure, he need show only negligence. *Bender v. Seattle*, 99 Wn.2d 582, 599, 664 P.2d 492 (1983). Not surprisingly, the LaMons characterize themselves as private figures, while The Daily World argues that they are public figures.

---

[3]The Court of Appeals also concluded that the LaMons had succeeded in proving other elements of defamation by clear and convincing evidence, namely, falsity, defamatory meaning, and unprivileged communication. Because we hold that there was no triable issue as to the defendants' fault, we need not address the Court of Appeals' discussion of the other elements.

A second issue has been raised concerning the appropriate standard of proof by which fault must be shown. Citing *Dunlap v. Wayne,* 105 Wn.2d 529, 533–35, 716 P.2d 842 (1986), the Court of Appeals concluded that the LaMons had to prove their case by clear and convincing evidence because Butler and The Daily World were media defendants. *LaMon,* 44 Wn. App. at 657–58. The LaMons claim that providing greater protection to media defendants in this manner violates the First Amendment. They contend that they should only be required to show fault by a preponderance of the evidence. The Daily World has not expressed any position on this issue. An amicus group, the Allied Daily Newspapers, proposes that instead of focusing on a media/nonmedia distinction, this court should apply the higher standard of proof to issues of public concern and the lower standard to issues of private concern.

Resolution of this case, however, does not require us to address either of these questions. Even if the LaMons were entitled to the more lenient standards of proof and fault, they would still have the burden at summary judgment of showing by a preponderance of the evidence that Butler and The Daily World acted negligently. This they have failed to do.

The only evidence the LaMons have submitted to show the defendants' negligence is Lorraine LaMon's affidavit, in which she concludes that Butler knew that the statements were false because the order of dismissal was read to her over the telephone. Lorraine LaMon implies that Butler should be charged with knowledge of the order's contents, and we agree. However, the order of dismissal does not on its face give any indication of its effect on the municipal court conviction, and it can be read in two ways. It could be interpreted to mean that the entire prosecution is dismissed, thereby negating the municipal court conviction. Alternatively, the order can be interpreted to mean that only the appeal in superior court is dismissed, leaving the lower conviction intact. That the defendants were ordered to pay costs only adds to the confusion. The most that can

be said is that reading the order would put one on notice to inquire further. And that is precisely what Butler did. She discussed the order with the city attorney involved in the case. According to Butler's deposition, the city attorney told her that the superior court dismissal did not affect Lorraine LaMon's conviction.

■ These facts do not constitute a prima facie case of negligence, even when we draw all reasonable inferences from the evidence in favor of the LaMons. The LaMons did not present any evidentiary material at summary judgment to controvert Butler's version of her conversation with the city attorney.[4] Thus, those facts are accepted as true. *See Washington Osteopathic Med. Ass'n v. King Cy. Med. Serv. Corp.*, 78 Wn.2d 577, 579, 478 P.2d 228 (1970); *see also Zurita v. Virgin Islands Daily News*, 578 F. Supp. 306, 309 (D.V.I. 1984); *Hideout Records & Distribs. v. El Jay Dee, Inc.*, 601 F. Supp. 1048, 1053 (D. Del. 1984) (and cases cited therein). This principle takes on added weight in the context of defamation cases, where the plaintiff has the burden of making a prima facie case.

A reasonable trier of fact in this case could reach but one conclusion from the evidence: the defendants did not act negligently. Accordingly, the LaMons did not present a prima facie case on the issue of fault, and summary judgment was properly entered against them.[5]

---

[4]In their motion for reconsideration to this court, the LaMons for the first time submitted an affidavit from the city attorney disputing Butler's account of their conversation. Because this was not presented to nor considered by the trial court on summary judgment, we cannot consider it now on appeal. *Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 390, 715 P.2d 1133 (1986). Additionally, we deny the LaMons' motion to supplement the record with this evidence pursuant to RAP 9.11, there being no excuse for their failure to present the evidence to the trial court below. See RAP 9.11(a)(3) and the discussion below in the section entitled, "Scope of Issues on Appeal".

[5]The LaMons argue that this conclusion violates their constitutional right to a jury trial. Const. art. 1, § 21. We are well aware that summary judgment decisions should not involve the resolution of factual issues. Such is the province of the factfinder at trial. Yet, Washington courts have held many times that summary

## Scope of Issues on Appeal

The LaMons have argued that it would be unfair for their case on appeal to be decided on the issue of fault. They contend that they did not have notice that the summary judgment hearing would include the issue of fault, because neither the trial judge nor the defendants addressed it below. They conclude that it would be unfair for this court to decide the appeal on the fault issue when it was not argued below.

We find this argument to be without merit. First, the LaMons were furnished with notice that they had to present a prima facie case on the issue of fault in order to survive the defendants' summary judgment motion. The defendants' memorandum in support of summary judgment quoted the following language from *Mark v. Seattle Times,* 96 Wn.2d 473, 486, 635 P.2d 1081 (1981), *cert. denied,* 457 U.S. 1124 (1982):

> Under our cases, a defamation plaintiff must show four essential elements: falsity, an unprivileged communication, fault, and damages. To make out a prima facie case for purposes of avoiding a summary judgment in favor of respondents, Mark would have to allege as to each element facts which would raise a genuine issue of fact for the jury.

(Citations omitted.) By reading this memorandum, the LaMons received notice that if they did not present evidence on the issue of fault, they ran the risk of summary judgment being entered against them.

■ Second, an appellate court can sustain the trial court's judgment upon any theory established by the

---

judgment should be granted when reasonable persons, giving all reasonable inferences to the nonmoving party, could only conclude that the moving party is entitled to judgment. In such cases, there is no genuine issue of material fact. *See, e.g., Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982); *Morris v. McNicol,* 83 Wn.2d 491, 494–95, 519 P.2d 7 (1974). When there is no genuine issue of material fact, as in the instant case, summary judgment proceedings do not infringe upon a litigant's constitutional right to a jury trial. *See Nave v. Seattle,* 68 Wn.2d 721, 725, 415 P.2d 93 (1966), *appeal dismissed,* 385 U.S. 450 (1967); *Diamond Door Co. v. Lane–Stanton Lumber Co.,* 505 F.2d 1199, 1203 (9th Cir. 1974).

pleadings and supported by the proof, even if the trial court did not consider it. *Wendle v. Farrow,* 102 Wn.2d 380, 382, 686 P.2d 480 (1984). The pleadings establish a defamation cause of action, an essential element of which is the defendants' fault. Therefore, dismissal for a failure to satisfy the burden of proving fault is based on a theory established by the pleadings. Furthermore, this theory is supported by proof in the record, most notably Butler's deposition, which was uncontroverted by the LaMons.[6] We conclude that the fault issue is properly before us.

### AFFIDAVITS OF PREJUDICE

The final issue in this case concerns affidavits of prejudice. Affidavits of prejudice are the means by which litigants in this state can prevent a judge who they perceive to be biased from hearing their case. Affidavits of prejudice are governed by RCW 4.12.040 and 4.12.050, which provide in relevant part:

> No judge of a superior court of the state of Washington shall sit to hear or try any action or proceeding when it shall be established as hereinafter provided that said judge is prejudiced against any party or attorney, or the interest of any party or attorney appearing in such cause. . . .

RCW 4.12.040.

> Any party to or any attorney appearing in any action or proceeding in a superior court, may establish such prejudice by motion, supported by affidavit that the judge before whom the action is pending is prejudiced against such party or attorney, so that such party or attorney cannot, or believes that he cannot, have a fair and impartial trial before such judge . . .

RCW 4.12.050.

We have summarized the effect of these statutes as follows:

> Under these statutes and under our decisions a party litigant is entitled, as a matter of right, to a change of

---

[6] We note also that the LaMons argued the issue of fault in their briefs, both at summary judgment and in the Court of Appeals.

judges upon the timely filing of a motion and affidavit of prejudice against a judge about to hear his cause or any substantial portion thereof on the merits. Such a motion and affidavit seasonably filed presents no question of fact or discretion. Prejudice is deemed to be established by the affidavit and the judge to whom it is directed is divested of authority to proceed further into the merits of the action.

*State v. Dixon,* 74 Wn.2d 700, 702, 446 P.2d 329 (1968).

However, the right to file affidavits of prejudice is not unlimited: "[N]o party or attorney shall be permitted to make more than one such application in any action or proceeding under this section and RCW 4.12.040." RCW 4.12-.050.

In this case, Lorraine LaMon filed an affidavit of prejudice against Judge Kirkwood and Edward LaMon filed an affidavit of prejudice against Judge Schumacher.[7] The LaMons argue that because they are each parties, they each have independent rights to file affidavits of prejudice under RCW 4.12.050.

■■ Analysis of this issue revolves around the interpretation of "party" in RCW 4.12.050. Are co–plaintiffs each parties to an action, or instead, do they together constitute one party? This is apparently an issue of first impression in this state. The term "party" is not defined in RCW 4.12.050. However, one of the definitions of "party" in Black's Law Dictionary reads as follows:

"Party" is a technical word having a precise meaning in legal parlance; it refers to those by or against whom a legal suit is brought, whether in law or in equity, *the party plaintiff or defendant, whether composed of one or more individuals* and whether natural or legal persons; all others who may be affected by the suit, indirectly or consequently, are persons interested but not parties.

---

[7]The record does not disclose the disposition of the affidavit filed against Judge Schumacher. Since Judge Kirkwood ultimately ruled on the case, he evidently refused to recuse himself.

(Italics ours.) Black's Law Dictionary 1010 (5th ed. 1979).[8] Under this definition, the LaMons together would constitute a single party.

This same result has been reached by the Oregon Supreme Court when interpreting a statute similar to ours. The Oregon statute provided that "no party or attorney shall be permitted to make more than two applications in any action or proceeding under this act." *U'Ren v. Bagley*, 118 Or. 77, 85, 245 P. 1074, 46 A.L.R. 1173 (1926) (quoting section 45–3, Oregon Laws). The Oregon Supreme Court interpreted the term "party" in this statute in the following manner:

> "Party" means either plaintiff or defendant, and includes all persons belonging to the particular class: 40 Cyc[lopedia of Law and Procedure] 146 [(1912)]. "Party" is used in a collective sense and if there be a plurality of plaintiffs, they are all only one party litigant.

*U'Ren*, at 85. *See also* 46 Am. Jur. 2d *Judges* § 212 (1969).

We find this holding to be persuasive. If we were to hold that each plaintiff and each defendant were entitled to file an affidavit of prejudice, then scores of judges could be disqualified in a single case. The Legislature could not have intended that result. Statutes must be interpreted so as to avoid absurd results. *General Tel. Co. of the Northwest, Inc. v. Utilities & Transp. Comm'n*, 104 Wn.2d 460, 471, 706 P.2d 625 (1985). Therefore, we hold that the language of RCW 4.12.050 limits co–plaintiffs or co–defendants to

---

[8]Black's Law Dictionary also provides a less restrictive definition of "party", which reads:

> A person concerned or having or taking part in any affair, matter, transaction, or proceeding, considered individually. A "party" to an action is a person whose name is designated on record as plaintiff or defendant. Term, in general, means one having right to control proceedings, to make defense, to adduce and cross–examine witnesses, and to appeal from judgment.

(Citation omitted.) Black's Law Dictionary, at 1010. As we explain later in this opinion, we decline to use such an expansive definition of "party" in construing RCW 4.12.050.

the filing of a single affidavit. The LaMons were only entitled to file a single affidavit of prejudice.[9]
The trial court's decision is affirmed.

CALLOW, C.J., and BRACHTENBACH, DOLLIVER, ANDERSEN, and SMITH, JJ., concur.

APPENDIX

1. and For Grays Harbor County

CITY OF WESTPORT,

Plaintiff,

vs.

EDWARD O. LAMON and LORRAINE LAMON, husband and wife,

Defendants.

No. 2 4 8 0

$6 > /^8$

**Order on Motion**

FILED
IN THE OFFICE OF
COUNTY CLERK, GraysHarborCo.,Wash.

NOV 1 0 1972

WINONA HAMMONDS, County Clerk
_____ DEPUTY

This cause coming on for hearing on motion of the defendants by and through their attorney of record, Arthur L. Davies, of Owens, Johnson and Weaver, Attorneys at Law, to dismiss the action.

and the same being stipulated by counsel, Arthur L. Davies for defendants and William E. Morgan for plaintiff,

and the Court being fully advised in the premises, it is ordered that the said motion be and the same is hereby granted. It is ordered that the above action be dismissed with.

---

[9]The LaMons argue that even if they were entitled to file only one affidavit of prejudice, then Judge Kirkwood should have disqualified himself upon receiving Lorraine LaMon's affidavit of prejudice. The premise underlying this argument is that Judges Schumacher and Kirkwood should have given priority to Lorraine LaMon's affidavit of prejudice, presumably because the cause of action was more hers than Edward's. However, there was no reason for the judges to do so. Both of the LaMons were named as plaintiffs in the case; therefore, either one had the right to file the single affidavit to which they were jointly entitled. Because they each had this right, the Judges had no way of knowing which affidavit was controlling. There is no evidence in the record to show that the LaMons indicated that one affidavit had priority over the other. Accordingly, we cannot conclude that Judge Kirkwood erred in hearing this case.

prejudice. It is further ordered, adjudged and decreed that the
defendants pay all costs in the matter.

to which ruling the Court _____ excepts and his exception is allowed.

Done in open Court this _____ *10* _____ day of _____ December _____ November _____, 19 *72*.

O. K. _____

PRESENTED BY: _____     APPROVED FOR ENTRY BY: _____
                                                          Attorney for Plainti

DEP EXHIBIT _____
SANDRA JO NELSON
NOTARY PUBLIC

No objection.
William E. Morgan
Attorney.

UTTER, J. (dissenting)—I dissent on two grounds. First, this court should unequivocally reject the distinction between media/nonmedia defendants in determining the applicable standard of proof in libel cases. The majority, by citing the opinion of the Court of Appeals, implies that the standard of proof depends upon the status of the defendant: "clear and convincing evidence" against a media defendant and "preponderance of the evidence" against a nonmedia defendant. Majority, at 198. To perpetuate this distinction, even while stating that it would not make any difference in deciding this case, majority at 198, only lends confusion to an area of law that desperately needs greater clarity.

Second, I believe that the LaMons have presented sufficient evidence of fault to overcome defendants' motion for summary judgment.

# I

In affirming the trial court's decision to grant defendants' motion for summary judgment, the Court of Appeals held that "[a] defamation plaintiff resisting a *media* defendant's motion for summary judgment must establish a prima facie case by evidence of *convincing clarity.*" (Some italics mine.) *LaMon v. Butler,* 44 Wn. App. 654, 657, 722 P.2d 1373 (1986). While noting correctly that this standard of proof was not required by the United States Supreme Court, the Court of Appeals reasoned from recent opinions of this court that media defendants have greater protection than ordinary citizens similarly engaged in the exercise of First Amendment rights. *LaMon,* at 657 (citing *Dunlap v. Wayne,* 105 Wn.2d 529, 716 P.2d 842 (1986)). Such a conclusion is not warranted and should be corrected.

There are three problems with the media/nonmedia distinction in our current approach to standard of proof issues in libel law. Each of them strongly suggests that the distinction should be dropped.

# A
## SULLIVAN STANDARDS MISCONSTRUED

First, to the extent that the heightened standard of proof came to be applied as a result of state court interpretations of United States Supreme Court decisions, those decisions have been misconstrued. In *New York Times Co. v. Sullivan,* 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710, 95 A.L.R.2d 1412 (1964), the Court held that in defamation cases where the plaintiff is a public official, a prima facie case must be established with evidence of "convincing clarity", including a showing of actual malice. *Sullivan,* at 285–86. This twin standard of actual malice and convincing clarity was later extended to cases where the plaintiff is a "public figure". *Curtis Pub'g Co. v. Butts,* 388 U.S. 130, 18 L. Ed. 2d 1094, 87 S. Ct. 1975 (1967). We adopted these standards of fault and proof for public figure plaintiffs in *Grayson v. Curtis Pub'g Co.,* 72 Wn.2d 999, 436 P.2d 756 (1967). While only the plurality of the United States

Supreme Court would have extended this twin standard to comments about private individuals which pertained to matters of "general public interest", *Rosenbloom v. Metromedia, Inc.*, 403 U.S. 29, 29 L. Ed. 2d 296, 91 S. Ct. 1811 (1971), this state nonetheless adopted the *Sullivan* standard for such comments because it felt constitutionally bound to follow the *Rosenbloom* plurality. *Miller v. Argus Pub'g Co.*, 79 Wn.2d 816, 490 P.2d 101 (1971).

However, in reconsidering the issue 3 years later, the United States Supreme Court held that the *Sullivan* standards were not constitutionally mandated when the plaintiff was a private individual; hence, the states were free to provide greater protection to defamed private individuals than to public figures. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 41 L. Ed. 2d 789, 94 S. Ct. 2997 (1974). Once again following the cue from the United States Supreme Court, Washington modified the standard for private person plaintiffs in defamation actions against the media. In *Taskett v. KING Broadcasting Co.*, 86 Wn.2d 439, 546 P.2d 81 (1976), this court overruled *Miller*. We stated that the *Sullivan* standard of liability "imposes a totally unacceptable burden" when applied to private plaintiffs and that, henceforth, such plaintiffs need only show ordinary negligence. *Taskett*, at 444.

*Taskett* only expressly addressed one aspect of the *Sullivan* twin standard, that of fault. The substantive evidentiary standard to be applied was left unstated. However, the logic which compelled us to adopt a lesser standard of liability for actions by private plaintiffs strongly suggests that the standard of proof should likewise be lower. To have the nature of the plaintiff determine the standard of liability but have the status of the defendant determine the standard of proof is confusing and inconsistent. Yet this is where our case law currently stands.

The higher standard of convincing clarity has occasionally been applied by state courts to suits by private persons even though the case authority applying this standard involved public officials or public figures. The first case

applying this standard to a private individual was *Sims v. KIRO, Inc.,* 20 Wn. App. 229, 580 P.2d 642, *review denied,* 91 Wn.2d 1007 (1978), *cert. denied,* 441 U.S. 945 (1979). There the court stated that a plaintiff must present evidence "of a sufficient quantum to establish a prima facie case with convincing clarity." *Sims,* at 237. While following *Taskett* insofar as the standard of fault to be applied, the court applied the *Sullivan* standard of proof, even though Sims was a private citizen and traditionally entitled to greater protection of his reputation than a public figure. To support its application of the convincing clarity standard rather than that of simple preponderance, the court cited two Washington cases—*Chase v. Daily Record, Inc.,* 83 Wn.2d 37, 515 P.2d 154 (1973) and *Exner v. AMA,* 12 Wn. App. 215, 529 P.2d 863 (1974). However, both of these cases involved plaintiffs who were public figures for whom the application of the *Sullivan* standards of fault and proof was constitutionally compelled.

The application of this heightened evidentiary standard was challenged by the private plaintiff in *Mark v. Seattle Times,* 96 Wn.2d 473, 635 P.2d 1081 (1981), *cert. denied,* 457 U.S. 1124 (1982), but the argument was rejected by this court. We stated then that for "policy reasons, rooted in the First Amendment . . . an early testing of plaintiff's evidence by a convincing clarity burden continue to be persuasive." *Mark,* at 487. *Chase* was again cited as the source for this rule.

The last case in this evolution was *Dunlap v. Wayne,* 105 Wn.2d 529, 716 P.2d 842 (1986). There the court noted for the first time that the cases applying the "convincing clarity" standard had involved media defendants (although it is equally accurate to say that those cases, with the exception of *Sims* and *Mark,* involved plaintiffs who were either public officials or public figures) and that "First Amendment concerns at that time supported the special protection that we extended . . ." *Dunlap,* at 534. The court suggested that the same First Amendment concerns were not implicated when a nonmedia defendant was being sued for a

statement about private affairs; thus, whenever a nonmedia defendant was involved "the usual rules governing summary judgment should control", presumably including a simple preponderance of the evidence standard. *Dunlap*, at 535. This media/nonmedia defendant distinction in defamation actions was reiterated without comment in *Guntheroth v. Rodaway*, 107 Wn.2d 170, 176, 727 P.2d 982 (1986) and is repeated in the majority opinion in the current case.

Thus, the convincing clarity standard of proof came to be applied in libel suits against media defendants as a result of mistaken interpretations of United States Supreme Court decisions.

## B
### Current Distinction Is Contrary to the First Amendment

Second, the media/nonmedia defendant distinction in defamation actions by private individuals is, as the LaMons argue, contrary to the First Amendment. Since this court's media defendant distinction currently rests upon "policy reasons, rooted in the First Amendment", *Mark*, at 487, it is important to consider that a clear majority of the Justices on the United States Supreme Court and several federal courts addressing the issue have stated that the First Amendment does *not* support granting the media special protection beyond that available to individual citizens. In *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 86 L. Ed. 2d 593, 105 S. Ct. 2939 (1985), five Justices signed separate opinions explicitly concluding that the First Amendment requires the equal treatment of media and nonmedia defendants and a sixth, Chief Justice Burger, agreed with this conclusion. Justice White was emphatic in opposing any media/nonmedia distinction in defamation law.

> None of our cases affords such a distinction; to the contrary, the Court has rejected it at every turn. It should be rejected again, particularly in this context, since it makes no sense to give the most protection to those publishers

who reach the most readers . . . with the most misinformation and do the most damage to private reputation. (Footnote omitted.) *Dun & Bradstreet,* at 773 (White, J., concurring).

In a dissenting opinion joined by three other members of the Court, Justice Brennan stated categorically that a media/nonmedia distinction in defamation law is

> irreconcilable with the fundamental First Amendment principle that "[t]he inherent worth of . . . speech in terms of its capacity for informing the public does not depend upon the identity of its source . . ."

*Dun & Bradstreet,* at 781, quoting *First Nat'l Bank v. Bellotti,* 435 U.S. 765, 777, 55 L. Ed. 2d 707, 98 S. Ct. 1407 (1978). Justice Brennan further emphasized the problems in defining "media" and suggested that any definition would soon become obsolete. Thus, he concludes that in the context of defamation law,

> the rights of the institutional media are no greater and no less than those enjoyed by other individuals or organizations engaged in the same activities.

*Dun & Bradstreet,* at 784.

A clear majority of the United States Supreme Court unequivocally reject any media/nonmedia distinction in libel law. This conclusion has since been strongly supported by two federal appellate courts. *Garcia v. Board of Educ.,* 777 F.2d 1403, 1409–11 (10th Cir. 1985); *In re IBP Confidential Business Documents Litig.,* 797 F.2d 632, 642 (8th Cir. 1986). The message is now loud and clear: distinguishing between media and nonmedia defendants in libel cases is contrary to the First Amendment. We should not continue to hold otherwise.

## C

### WASHINGTON CONSTITUTION

Third, even assuming that the states can give greater protection to media as opposed to nonmedia defendants without violating either the First or Fourteenth Amendments, it has not been determined whether the Washington

Constitution does in fact provide for such a distinction. In *Dunlap*, this court noted that "the Washington Constitution may provide heightened protection to media defendants". *Dunlap*, at 534 n.1 (citing Const. art. 1, § 5 and *State v. Coe*, 101 Wn.2d 364, 679 P.2d 353 (1984)). In the present case, this issue was not raised before the Court of Appeals. But that court nonetheless concluded from its evaluation of Washington case law and the footnote in *Dunlap* that the Washington Constitution "*does* provide heightened protection to media defendants". (Italics mine.) *LaMon*, at 657 n.2.

Such a definitive statement by the Court of Appeals is unwarranted. First, the language of article 1, section 5 is hardly unambiguous on this point. There is no differentiation between freedom of speech and press and, hence, no clear grounds for distinguishing levels of protection for comments from media and nonmedia sources. Second, the footnote cited in *Dunlap* goes only so far as to suggest that article 1, section 5 *may* provide heightened protection to the media in defamation cases. However, it was only a suggestion, was not essential to the holding in the case, and, most importantly, has never been raised in arguments before this court. Third, the special protection provided by the "convincing clarity" evidentiary standard has not been sought by the media defendants in this case as a state constitutional right; it is the petitioners who raise the issue on appeal claiming that the state constitution affords no such enhanced protection. To allow the language of the Court of Appeals to stand granting state constitutional protection to the media which is not granted to individual citizens of the state is highly unsatisfactory. The media defendant has not urged its adoption and this court has not been presented with any arguments using the nonexclusive criteria of *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808 (1986), or other reasons mandating heightened state constitutional protection.

The media/nonmedia defendant distinction in our defamation law should be dropped. The appropriate evidentiary

standard should be governed solely by the nature of the plaintiff, in the same manner that we determine which standard of liability to apply. A public figure plaintiff would therefore need to prove actual malice by clear and convincing evidence and a private person would only need to show negligence by simple preponderance of the evidence. The status of the defendant is irrelevant.

It is altogether proper to make the nature of the plaintiff the determining factor. The two basic rationales for the strict *Sullivan* standards are the need to promote vigorous and robust debate on matters and personalities affecting public policy and the ability of public figures to use the media to rebut false statements made about them. However, neither of these rationales is implicated when a libel suit is brought by a private person.

Abolishing the media/nonmedia distinction would be consistent with recent decisions of the United States Supreme Court and federal courts of appeal which have clarified the standards since our earlier cases. It would also be consistent with this court's reasoning in *Taskett* where it adopted "ordinary negligence" as the standard of fault for defamation cases involving a private person suing a media defendant.

The distinction between media and nonmedia defendants is faulty and should no longer be employed. I believe that "the best way forward is to take two steps back" and correct our mistake. The proper standard of proof in any libel action should depend solely on the nature of the plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). Otherwise we perpetuate a body of law under which two defendants engaged in the same conduct may suffer vastly different penalties simply because one is a member of the media and the other is not.

## II

The Court of Appeals determined, and the majority does not disagree, that the LaMons are private persons for purposes of this litigation. Thus, they would be entitled to

recover if they can show by a preponderance of the evidence that the statements made about them were false, had a defamatory meaning, were made negligently by the defendant, and were not otherwise privileged communication. *See Guntheroth,* at 175; *Dunlap,* at 542. As the nonmoving party in a summary judgment proceeding, the LaMons are further entitled to have the evidence and all reasonable inferences construed in the light most favorable to them and against the defendants. *Herron v. Tribune Pub'g Co.,* 108 Wn.2d 162, 736 P.2d 249 (1987). Applying the appropriate evidentiary standard, I believe that the LaMons have presented a prima facie case and are entitled to proceed to trial.

The Court of Appeals concluded that the LaMons had provided sufficient evidence to show all the elements of defamation except defendants' fault. That court ruled that the LaMons had not made a prima facie showing of negligence and upheld summary judgment for the defendants. On this basis alone the majority affirms the decision.

The issue before us is whether there is sufficient evidence from which a trier of fact could reasonably conclude that defendants Butler and The Daily World *"knew or, in the exercise of reasonable care, should have known"* that the statements made about the LaMons were false. *Taskett,* at 445. While the majority, like the Court of Appeals, examines only the statements made regarding the assault conviction, the LaMons' cause of action actually rests upon three allegedly defamatory statements. In addition to the false statements regarding the convictions, Butler and The Daily World are alleged to have made false statements to the effect that the LaMons' civil rights litigation against the police chief was dismissed in federal court for being "frivolous" when in fact there was a substantial recovery, and to the effect that the civil rights suit was "connected" with the alleged assault incident when, in fact, there was no connection whatsoever.

These statements were made not once, but over the course of several years. Butler continued to make these

statements even *after* the LaMons had notified her and The Daily World of their falsity. Although the statute of limitations limits the LaMons' suit to those statements published in September 1979 and April 1980, the record contains several other articles published before then containing the same defamatory remarks. The false statements that were made shortly after the reversal of LaMon's assault conviction may well have been the result of honest mistake. The LaMons are nonetheless entitled to argue that it is at least negligent and perhaps reflects actual malice when the defendant reporter and newspaper persist in printing the same mistaken and defamatory comments for 7 years.

The strongest basis for the LaMons' action lies in the false reporting of an assault conviction in municipal court that was later reversed by dismissal in superior court. Butler says that after she heard of the superior court order dismissing the action against the LaMons, she did not know its effect on the municipal court conviction. However, Butler did not take the time to read the order herself. Butler Deposition, at 13. Had she done so, she would have noted that the Superior Court Judge ordered that the "above action be dismissed with prejudice"; and that the "above action" clearly referred to the City of Westport's assault charges against the LaMons, not merely the appeal of the municipal court conviction. Clerk's Papers, at 66.

Although our law has since changed, the rule had been well established at the time the order was issued that dismissal of a superior court action voids a prior municipal conviction. *See State v. Buckman,* 51 Wn.2d 827, 322 P.2d 881 (1958). The majority's characterization of the superior court order as a "dismissal of Lorraine LaMon's appeal" is inexplicable when the language of the order is given its plain and simple meaning. Majority, at 195.

Butler asserts that she contacted the Westport city attorney regarding the implications of the dismissal. According to her unsupported recollection of the conversation, the city attorney told her that the original municipal

court conviction still stood despite the Superior Court's dismissal of the case. Butler Deposition, at 13–14. The majority is correct in stating that the LaMons offer no direct evidence that this conversation did not take place or that the city attorney said something other than what Butler now recalls. However, the LaMons have submitted evidence that it was the city attorney himself who initially proposed the order dismissing the case against them. Clerk's Papers, at 63. It is at least arguable that the same city attorney who proposed dismissing the case against the LaMons in the first place would not later tell a reporter that the assault conviction was not affected. This evidence and the reasonable inference from it presents a genuine issue of material fact sufficient to overcome the defendants' motion for summary judgment. For this reason we cannot accept Butler's version of events at face value.

The two other false statements made by the defendants in the publications at issue here further suggest that the LaMons have an adequate factual basis for their complaint. Butler continued to write that the LaMons' civil rights action against the police chief was dismissed as being "frivolous", despite knowing that in fact the LaMons were successful in their suit in federal district court. In this instance, Butler cannot claim to have been unaware of the true facts of the case. The LaMons had earlier paid for several large advertisements, published in the same newspaper, reprinting verbatim the findings of fact and judgment of the federal District Court granting them relief and the memorandum opinion of the Ninth Circuit Court of Appeals affirming the judgment. Clerk's Papers, at 41. Butler admitted in her deposition that she knew of the advertisements. Butler Deposition, at 35. In addition, Butler falsely reported that the civil rights action "stemmed from" and was "connected with" the assault conviction. She later admitted in deposition that she knew that the basis for the LaMons' suit against the police chief was a denial of equal protection and had nothing to do with the prior municipal court conviction. Butler Deposition, at 27–28.

It is difficult to reconcile these facts with the majority's conclusion that no trier of fact could reasonably find the defendants at fault. The LaMons clearly have sufficient evidence with which to proceed to trial. The Court of Appeals decision should be reversed and the case remanded for trial.

DORE and PEARSON, JJ., concur with UTTER, J.