# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ISAAC M. NSEJJERE, | No. 60351-9-II |
| Appellant, | |
| v. | |
| CARYN M. ANDERTON, | UNPUBLISHED OPINION |
| Respondent, | |
| DOES 1-25 inclusive, | |
| Defendants, | |

GLASGOW, J.—Isaac Nsejjere had a brief romantic relationship with Caryn Anderton. Nsejjere, who was in his 50s, had also been romantically involved with 16-year-old ASR. Shortly after Anderton and Nsejjere broke up, Anderton formed a friendship with ASR where they discussed Nsejjere. Anderton criticized Nsejjere for having intercourse with someone so young, characterizing Nsejjere as a rapist and a pedophile.

Nsejjere then sued Anderton for defamation, alleging that Anderton defamed him by sending him graphic text messages; telling ASR that Nsejjere's contact should be considered rape; and telling a mortgage loan officer that Nsejjere was a thief and a pedophile who lied about his education, among other alleged statements. Anderton moved to dismiss the claims, sought CR 11 sanctions, and sought a finding that Nsejjere was a vexatious litigant.

The trial court dismissed the complaint, imposed $15,000 in sanctions, and based in part on Nsejjere's litigation history, ordered that Nsejjere could not file new suits against Anderton or

her friends, family, and associates without written permission from the Snohomish County presiding judge. Nsejjere appeals. We affirm the trial court and order that Nsejjere pay Anderton's reasonable attorney fees for filing this frivolous appeal.

FACTS

I. BACKGROUND

Nsejjere has filed dozens of civil complaints since 2019 unrepresented by counsel. Nsejjere had a brief romantic relationship with Anderton, and they broke up when Anderton learned that Nsejjere had been unfaithful. After the breakup, Nsejjere had possession of Anderton's car and refused to return it, despite Anderton and her family members repeatedly asking for the car back.

Nsejjere, who was in his 50s, also had a romantic relationship with 16-year-old ASR, who became pregnant twice as a result of intercourse with Nsejjere. Anderton and ASR became close and had conversations about Nsejjere's conduct. According to Nsejjere, Anderton told ASR that Nsejjere's sexual contact with ASR should be considered rape. Anderton also allegedly told a mortgage loan officer that Nsejjere was a thief and a pedophile who lied about his education.

II. DEFAMATION SUIT

Shortly after Anderton broke up with him, Nsejjere sued Anderton for defamation. Nsejjere was not represented by counsel. In his complaint, Nsejjere raised claims based on statements that Anderton allegedly made to Nsejjere, ASR, and a loan officer.

Specifically, Nsejjere claimed that Anderton defamed him by sending Nsejjere text messages expressing disgust with him as a person and accusing him of sex crimes and theft. Nsejjere also claimed that Anderton defamed him by sending him text messages regarding sexual fantasies. Additionally, Nsejjere alleged that Anderton made derogatory and racist comments in

texts sent directly to Nsejjere. Nsejjere claimed that Anderton later showed the text messages to ASR and others.

Nsejjere also claimed that Anderton defamed him by asking ASR for details about her relationship with Nsejjere and telling ASR that Nsejjere's contact with ASR should be considered rape because ASR was underage. Nsejjere quoted an alleged text message from ASR to Nsejjere indicating that ASR did not consider the contact rape and did not tell Anderton that Nsejjjere raped her. Nsejjere did not allege that Anderton's rape accusation was published to anyone else besides ASR.

Nsejjere also claimed that Anderton defamed him by contacting a mortgage loan officer and telling him that Nsejjere was a thief and a pedophile and discouraging the loan officer from doing business with Nsejjere. Nsejjere also alleged that Anderton told the loan officer and ASR that he lied about his education by saying he did not have a degree from City University of Seattle. Nsejjere alleged, "[Anderton] knows that [Nsejjere] – IN FACT – holds a master's degree and completed his doctoral courses at City University of Seattle." Clerk's Papers (CP) at 76. But the complaint did not specify what degree, if any, Nsejjere held from that school.

In Anderton's answer, she admitted making some of the alleged statements to Nsejjere but denied making any statements to third parties. Anderton also raised the defense that Nsejjere failed to state a claim, but did not specify whether she intended to assert that motion under CR 12(b)(6) or 12(c). Nsejjere does not challenge on appeal factual findings that during discovery, Nsejjere served discovery requests that contained knowingly false statements about third parties that were unrelated to his claims against Anderton. The court stayed discovery based on a finding that Nsejjere had "engaged in bad faith discovery and litigation practices." CP at 25.

Anderton moved to dismiss the complaint under CR 12(b)(6) focusing on how the complaint failed as a matter of law, but Anderton appears to have relied on declarations and attachments submitted with the motion. She argued that the complaint did not state a claim because it failed to plead facts showing the allegedly defamatory statements were false or published negligently to third parties. Specifically, she argued that many of the statements were not defamatory as a matter of law because they were stated directly to Nsejjere; were not factual statements but instead were opinions, threats, or accusations; and any underlying facts were either true or known to the recipient, or both. Anderton also requested sanctions under CR 11 and restrictions preventing further vexatious litigation by Nsejjere because the complaint was filed for the improper purpose of harassing Anderton, and because Nsejjere engaged in harassing discovery practices.

Nsejjere responded that Anderton's facts were untrue but did not present argument to address the legal deficiencies Anderton relied on and did not provide responsive declarations. His response contained personal attacks on Anderton's character and screenshots of Anderton's alleged text messages, some apparently sent during their relationship showing sexual fantasies and others apparently after the relationship, with vulgar insults toward Nsejjere.

The trial court dismissed the case with prejudice and granted Anderton's request for CR 11 sanctions and vexatious litigation restrictions. The order indicated that the trial court considered Anderton's declarations and attached exhibits, but it is unclear whether the court considered these facts for purposes of evaluating the motion to dismiss or only for purposes of evaluating the other motions.

The final order contained a conclusion that Nsejjere was a vexatious litigant and violated CR 11 based on the court's finding that Nsejjere was using the court system for an improper

4

purpose, namely invading Anderton's privacy and the privacy of others. Specifically, the court found that Nsejjere's complaint "unnecessarily include[d] grotesque language that [wa]s unrelated to any alleged defamation. There was no legitimate reason to publicize that language, except to harm the Defendant and innocent third parties." CP at 5. The court also found that Nsejjere's discovery requests contained "knowingly false statements about third parties" that were "completely unrelated" to his complaint. *Id.* The court also found that protective sanctions were needed based on the "frivolous and offensive nature of Plaintiff's complaint, the harassing discovery practices, significant harm caused to innocent third parties and Plaintiff's litigation history." *Id.* Thus, the trial court ordered Nsejjere to pay $15,000 in sanctions and barred him from filing litigation against Anderton or her family, employers, associates, or friends without the written approval of the Snohomish County presiding judge.

Nsejjere appeals.

ANALYSIS

I. DISMISSAL

Nsejjere argues that the court erred by dismissing his defamation claims against Anderton. We disagree.

A.      Standard of Review

Dismissal under CR 12(b)(6) is warranted if the pleadings do not state a claim upon which relief could be granted.[1] A party can also move for judgment on the pleadings under CR 12(c) based on failure to state a claim. We review de novo a trial court's dismissal for failure to state a

---

[1] The Supreme Court of Washington amended CR 12 effective September 1, 2025, but the amendments are immaterial to the issues in this appeal. Gen. Ord. 25700-A-1636 (Wash. Jun. 5, 2025).

claim. *San Juan County v. No New Gas Tax*, 160 Wn.2d 141, 164, 157 P.3d 831 (2007). We ask whether "it appears beyond doubt that the claimant can prove no set of facts, consistent with the complaint, [that] would justify recovery." *Id.*

However, if the court considers matters outside the pleadings, "the motion shall be treated as one for summary judgment." CR 12(c). Here, the trial court listed declarations in the materials it considered, so we can review the ruling under the summary judgment standard. *Lakey v. Puget Sound Energy, Inc.*, 176 Wn.2d 909, 922, 296 P.3d 860 (2013); *Mason v. Mason*, 19 Wn. App. 2d 803, 821, 497 P.3d 431 (2021). Under this standard, we view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Lakey*, 176 Wn.2d at 922. We affirm if "'there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.'" *Id.* (quoting *Qwest Corp. v. City of Bellevue,* 161 Wn.2d 353, 358, 166 P.3d 667 (2007)).

We note that Nsejjere argues that the motion to dismiss was untimely because a CR 12(b)(6) motion must be made before the responsive pleading. We need not consider this argument because under the plain language of the rule, the motion was converted into a summary judgment motion when the parties filed, and the court did not exclude, matters outside the pleadings. CR 12(b). Additionally, even if we were to treat it as a CR 12 motion, Anderton's answer raised the defense of failure to state a claim so the defense was not waived. Moreover, CR 12(c) permits a motion for judgment on the pleadings after the answer, so in any event, Nsejjere's untimeliness argument is without merit.

B.      Nsejjere Failed to Plead or Present Facts That Would Constitute Defamation

Nsejjere's complaint raised claims based on Anderton's alleged text communications to Nsejjere, ASR, and the mortgage loan officer. Nsejjere failed to state a claim and failed to establish a genuine issue of material fact as to each group of statements.

Baseless defamation lawsuits, even before trial, may chill the exercise of free speech guaranteed by the First Amendment to the United States Constitution. *Mohr v. Grant*, 153 Wn.2d 812, 821, 108 P.3d 768 (2005) (plurality opinion); *see also id.* at 831-34 (Chambers, J., concurring in relevant part and dissenting in result). Accordingly, the Washington Supreme Court has explained that "summary judgment plays a particularly important role in defamation cases." *Id.* at 821. Therefore, to defeat summary judgment, "the plaintiff has the burden of establishing a prima facie case on all four elements of defamation: falsity, an unprivileged communication, fault, and damages." *LaMon v. Butler*, 112 Wn.2d 193, 197, 770 P.2d 1027 (1989); *accord Mohr,* 153 Wn.2d at 822. "The prima facie case must consist of specific, material facts, rather than conclusory statements, that would allow a jury to find that each element of defamation exists." *LaMon*, 112 Wn.2d at 197.

The first element, falsity, requires showing that the allegedly defamatory statement "is provably false, either in a false statement or because it leaves a false impression." *Mohr*, 153 Wn.2d at 825. In reviewing falsity, we ask not whether the statement is literally true but instead whether "the statement is substantially true" or "the gist of the story, the portion that carries the 'sting,' is true." *Mark v. Seattle Times*, 96 Wn.2d 473, 494, 635 P.2d 1081 (1981). Determining the "sting" is a question of law, at least in some cases. *Mohr*, 153 Wn.2d at 826; *Haueter v. Cowles Pub. Co.*, 61 Wn. App. 572, 585, 811 P.2d 231 (1991). A statement of pure opinion cannot be the basis of a defamation claim, and the determination of whether a statement is actionable fact or

nonactionable opinion is a question of law for the court. *Benjamin v. Cowles Publ'n Co.*, 37 Wn. App. 916, 922, 684 P.2d 739 (1984). Additionally, "[w]hen the audience knows the facts underlying an opinion and can judge the truthfulness of the allegedly defamatory statement themselves, the basis for liability for the opinion is undercut." *Duc Tan v. Le*, 177 Wn.2d 649, 664, 300 P.3d 356 (2013).

The second element requires a communication to someone other than the plaintiff. *Lunz v. Neuman*, 48 Wn.2d 26, 33, 290 P.2d 697 (1955). The issue of privilege is not relevant here.

The third element, fault, requires a different showing depending on the plaintiff's status as a private or public figure. *See LaMon*, 112 Wn.2d at 197. Where, as here, the plaintiff is a private individual and the communications are of a private concern, the plaintiff must show by a preponderance of the evidence that the defendant was negligent, meaning the defendant knew or in the exercise of reasonable care should have known that the statement was false or would create a false impression in some material respect. *Id.*; *Maison de France, Ltd. v. Mais Oui!, Inc.*, 126 Wn. App. 34, 44, 108 P.3d 787 (2005); *Valdez-Zontek v. Eastmont Sch. Dist.*, 154 Wn. App. 147, 157, 225 P.3d 339 (2010).

Finally, the fourth element, damages, is not argued here. *See Purvis v. Bremer's Inc.*, 54 Wn.2d 743, 747, 344 P.2d 705 (1959).

1.      Anderton's alleged text messages to Nsejjere cannot support a defamation claim

The trial court properly dismissed those claims and portions thereof that were based on text messages sent from Anderton to Nsejjere. As a matter of law, communications from Anderton to Nsejjere cannot constitute defamation because the law requires publication to third parties. *Lunz*, 48 Wn.2d at 33. Moreover, even if the alleged messages were later shown to third parties, the text messages from Anderton to Nsejjere do not indicate anything defamatory because if true, they

reflect only Anderton's alleged opinions and sexual fantasies and are not statements of fact regarding Nsejjere. *See Duc Tan*, 177 Wn.2d at 662. Therefore, we hold Nsejjere failed to plead or present facts that would state a claim for defamation based on Anderton's alleged text messages to him, and these claims were properly dismissed as a matter of law.

2. Anderton's alleged statements, directives, and questions to ASR regarding Nsejjere's conduct toward ASR cannot support a defamation claim

The trial court also properly dismissed Nsejjere's claims based on the alleged statements from Anderton to ASR regarding Nsejjere's conduct toward ASR. To the extent Nsejjere claimed that Anderton defamed him by telling ASR that Nsejjere had raped ASR when ASR was a minor, this cannot be defamation because ASR would know whether the underlying fact was true or false, and Nsejjere did not claim that Anderton published this allegation to anyone else besides ASR. *See Duc Tan*, 177 Wn.2d at 664. To the extent Nsejjere claimed that Anderton defamed him by asking questions about his relationship with ASR, this cannot be defamation because the complaint does not allege any statement of fact from Anderton to Nsejjere, only that she asked questions seeking information from ASR. The rest of the alleged communications from Anderton to ASR fail as a matter of law for the same reason—they do not contain express or implied statements of fact.

Thus, we hold Nsejjere failed to plead or present facts showing that any statements Anderton made to ASR regarding the relationship between ASR and Nsejjere would constitute defamation. These claims were also properly dismissed as a matter of law.

3. Nsejjere did not plead or make a prima facie showing that Anderton's alleged statements regarding Nsejjere's education, pedophilia, and theft were false or made negligently

Finally, the court properly dismissed the remaining claims, including that Anderton defamed Nsejjere by telling others that he was a pedophile and a thief who lied about his education.

Again, Nsejjere's claim is deficient as a matter of law because he failed to plead facts showing the statements were false, and his own admissions show that the "sting" of each allegedly defamatory statement was true.

First, these claims were properly dismissed because Nsejjere's admissions show that the "sting" of each allegedly defamatory statement was true, an issue we may determine as a matter of law. To the extent Anderton told others that Nsejjere was a pedophile, Nsejjere admitted to engaging in sexual intercourse with a 16 year old child when Nsejjere was in his 50s, and he did not specifically deny being sexually attracted to minors. We are permitted to determine the "sting" of the allegedly defamatory statement as a matter of law and here, Nsejjere's own admissions establish that the "sting" is essentially true. *Mohr*, 153 Wn.2d at 826. Given the context, if Anderton used the term "pedophile" colloquially to describe Nsejjere's sexual relationship with a minor, this cannot be defamation because Nsejjere admits to the relationship itself. Thus, Nsejjere failed to state a claim based on the accusation that he was a pedophile, and this claim fails as a matter of law because he admitted facts supporting the core truth of the statement.

Similarly, Nsejjere admitted to having possession of Anderton's car and that he did not return it despite Anderton and her relatives repeatedly asking for the car back. Again, Nsejjere's admissions show that the "sting" of the allegedly defamatory statements was true, so his claim is legally deficient to the extent he relies on Anderton's comments that he was a thief. *Id.* Even if this were not the case, Nsejjere did not adequately plead that Anderton made any false statements negligently, and his admissions make it impossible for us to infer the requisite level of fault. *See LaMon*, 112 Wn.2d at 197. Thus, we hold Nsejjere's claims based on Anderton allegedly saying he was a pedophile and a thief were legally deficient and properly dismissed.

Lastly, Nsejjere did not plead facts that would support a claim for defamation based on Anderton saying that Nsejjere lied about his education. The most Nsejjere alleged in his complaint was, "[Anderton] knows that [Nsejjere] – IN FACT – holds a master's degree and completed his doctoral courses at City University of Seattle." CP at 76. This does not clearly indicate what degree, if any, Nsejjere holds from that school. And although Anderton pointed this out and argued the failure to allege falsity was fatal to this claim, Nsejjere did not seek to amend his complaint or even argue that he did in fact hold a degree from City University of Seattle. Moreover, like the other alleged statements, Nsejjere did not plead facts that would support an inference that Anderton was negligent in making any false statements about his education. *See LaMon*, 112 Wn.2d at 197. Thus, Nsejjere's complaint is legally insufficient to state a claim for defamation based on Anderton's statements about Nsejjere's education, and we hold that these claims were properly dismissed.

We affirm the dismissal of all of Nsejjere's claims.[2]

## II. SANCTIONS AND VEXATIOUS LITIGANT RESTRICTIONS

We also affirm the $15,000 sanctions award and the order preventing Nsejjere from filing additional suits against Anderton and her family, employers, associates, or friends without written approval from the presiding judge of Snohomish County Superior Court.

CR 11 is intended to deter baseless filings and abusive use of the judicial system. *Bryant v. Joseph Tree, Inc.*, 119 Wn.2d 210, 219, 829 P.2d 1099 (1992). The rule authorizes sanctions for certifying pleadings, motions, and legal memoranda that are baseless or are interposed for an improper purpose. CR 11. We review CR 11 sanctions for an abuse of discretion, meaning the

---

[2] Given our resolution of these issues, we need not address Anderton's argument that the complaint was facially deficient because it did not comply with RCW 7.96.040.

ruling was manifestly unreasonable or based on untenable grounds or reasons. *Watness v. City of Seattle*, 11 Wn. App. 2d 722, 735-36, 457 P.3d 1177 (2019).

In addition to imposing CR 11 sanctions, courts may "'enjoin a party from engaging in litigation upon a specific and detailed showing of a pattern of abusive and frivolous litigation.'" *Bay v. Jensen*, 147 Wn. App. 641, 657, 196 P.3d 753 (2008) (internal quotation marks omitted) (quoting *Yurtis v. Phipps,* 143 Wn. App. 680, 693, 181 P.3d 849 (2008)). The injunction must be reasonable and should not completely bar a party from accessing the courts. *Id.* We review vexatious litigation orders for abuse of discretion. *Id.*

Here, the trial court found that Nsejjere was using the court system for an improper purpose, namely invading Anderton's privacy and the privacy of others by including "grotesque language" with "no legitimate reason." CP at 5. Nsejjere does not challenge the factual findings underlying the sanctions, instead arguing that the court erred because his claims had merit. But the court imposed sanctions for filing the complaint for an improper purpose, not for filing a baseless complaint, so Nsejjere's arguments are completely disconnected from the court's reasoning. We hold that the court's unchallenged findings amply support both the imposition of CR 11 sanctions and the conclusion that Nsejjere was a vexatious litigant.

We also conclude that the court's vexatious litigation restriction was reasonable because it allowed Nsejjere to access the courts so long as he obtained written approval from the Snohomish County presiding judge. This restriction was necessary to protect Anderton and her listed associates based on the "frivolous and offensive nature of Plaintiff's complaint, the harassing discovery practices, significant harm caused to innocent third parties and Plaintiff's litigation history." CP at 5. Therefore, we affirm the CR 11 sanctions and the vexatious litigation restriction.

ATTORNEY FEES

Finally, Anderton requests attorney fees under RAP 18.9(a), which authorizes an award of attorney fees as a sanction for filing a frivolous appeal. An appeal is frivolous "'if there are no debatable issues upon which reasonable minds might differ and it is so totally devoid of merit that there [is] no reasonable possibility of reversal.'" *State v. Chapman*, 140 Wn.2d 436, 454, 998 P.2d 282 (2000) (alteration in original) (quoting *State ex rel. Quick-Ruben v. Verharen*, 136 Wn.2d 888, 905, 969 P.2d 64 (1998)). Here, as we conclude above, Nsejjere's claims are completely without merit and he does not challenge the court's finding that he filed his "frivolous and offensive" complaint for an improper purpose. CP at 5. We award reasonable attorney fees to Anderton in an amount to be determined by a commissioner of this court.

CONCLUSION

We affirm the trial court and grant Anderton's request for reasonable attorney fees in an amount to be determined by a commissioner of this court.

No. 60351-9-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

GLASGOW, J

We concur:

CRUSER, C.J.

PRICE, J.